140 So. 600

## DUKE v. GAINES.

### 6 Div. 5.

Supreme Court of Alabama.

March 10, 1932.

Rehearing Denied April 7, 1932.

Nesbit & Sadler, of Birmingham, for appellant.

Martin, Thompson & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

BOULDIN, J.

Action under the homicide statute (Code 1923, § 5696) for negligent or wanton conduct causing the death of plaintiff's intestate.

Decedent, A. A. Gaines, came to his death, according to plaintiff's evidence, as the result of personal injury received by coming in collision with an automobile owned and driven by the defendant at a public street crossing.

The first insistence is that defendant was due the affirmative charge on the wanton count.

"Wanton injury" was quite accurately defined by the trial court in these words: "Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury." Mobile Electric Co. v. Fritz, 200 Ala. 692, 77 So. 235; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

In considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to plaintiff, regardless of any·view we may have as to the weight of evidence; and must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable.

Plaintiff's evidence tended to show the following:

The accident occurred at the intersection of Eighteenth street and First avenue in the city of Birmingham. Mr. Gaines was going north with Eighteenth street, crossing First avenue in a marked-off zone some twelve feet wide in line with the sidewalk on west side of Eighteenth street.

·Mr. Duke was driving east on First avenue.

The time was a little before 8 o'clock in the morning. At this hour automobile traffic along First avenue at this point was heavy; pedestrian traffic not so heavy, but to use the words of defendant, "I knew that that crossing was used very frequently there in the mornings by pedestrians, and knew that on the morning of March 4th," the date of accident.

Traffic movement was regulated by traffic light signals located above the center of the intersection.

By ordinance it was declared: Green light means "safety and go," red light means "danger and stop," and amber light means "caution and clear intersection." By the green and red light signals traffic moved alternately for periods of fourteen seconds each. The amber light was on for five seconds.

First avenue at the intersection is 70 feet in width from curb to curb. A double line of street car tracks is located ·along the center of the avenue.

Mr. Gaines and a Mr. Marbury entered the intersection on the green light, walking north on the marked-off zone for pedestrians. At that moment east-bound automobiles were lined up three abreast just to the left of this zone. About the time they were passing the third car, Mr. Marbury, according to his testimony, discovered defendant's car coming around to the left or north of this standing car at a rate of 20 to 25 miles per hour. He stepped back and avoided a collision, but Mr. Gaines to his right came in contact with the moving car. He struck the car on the side, Mr. Marbury estimates about even with the windshield, another witness about the mud guard or fender over the front wheel.

Defendant testified he came to a stop to the rear of the standing car, and when the amber light came, he rounded this car, entered the pedestrian zone on the green light, was moving at about the speed of a brisk walk, when, suddenly, the man ran into his car on the right side. A few moments later Mr. Duke carried Mr. Gaines to the hospital in his car.

Further evidence.tended to show that entering such intersection at the speed named by Mr. Marbury was in violation of a city ordinance; that in "whipping" around the car defendant's automobile was beyond the center of the avenue, in the zone of westbound traffic, also in violation of an ordinance; that while in this position defendant discovered a street car moving· west on the north track and veered to the right to clear the track about the moment of contact with Mr. Gaines.

Defendant testifies he did not see any pedestrian. There is no evidence that he did. He further testifies he was looking straight ahead and did not look to the right for pedestrians.

Appellant argues that when the green light appears the automobile driver may lawfully presume the crossing is clear of pedestrians. No such presumption obtains, at least under all conditions.

The general duty to operate automobile with careful and prudent regard for the safety of others is not removed by the presence of traffic lights. The city ordinance recognizes this general duty in connection with the speed limit in these words: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing."

In this connection we observe that by actual calculation a man walking at a speed of four miles per hour will go a little less than six feet per second, or less than thirty feet during the five-second period the amber light is on.

The line of pedestrians may continue to enter the intersection as long as confronted by the green light. Those entering just before the amber light appears cannot, at usual speed, pass the center of First avenue before the green light appears facing east-bound automobiles. To say the green light is an invitation to heedlessly proceed would render the traffic signals a trap for pedestrians under such conditions.

If, with full knowledge that the crossing.was, at that hour, in very frequent use by pedestrians, defendant whipped around the standing car (not shown to have been unduly slow in moving) and unlawfully entered the crossing in the zone for west-bound traffic, and at excess speed, without looking to the right or left, we are impelled .to hold it became a jury question whether he was conscious that such conduct would probably result in injury to some one. There was no er-

ror in submitting to the jury the issues under the wanton count.

■ Charges 30 and 31 refused to defendant are misleading in assuming that automobiles have a superior right over pedestrians who have properly entered the crossing, are proceeding with due dispatch, but are caught by the red light before they can get across.

Persons so circumstanced are charged with the duty of ordinary care, but we have declared the rule that there is no duty, as matter of law, to keep a special lookout for automobiles while exercising the lawful right to cross the street at that time and place. Shafer v. Myers, 215 Ala. 678, 112 So. 230.

■■ It appears Employers' Insurance Company of Alabama was the carrier of liability insurance for defendant. With a view of avoiding any disclosure of this fact to the jurors by examining them in person touching their interests in such company, evidence was introduced before the trial judge to the effect that the list of jurors had been checked with the books and records of said company, and none of them were stockholders or otherwise shown to be interested in the insurance company. On cross-examination it appeared the insurer is an Alabama corporation with 1,000 shares of stock outstanding, and that it had some 1,500 policyholders. Plaintiff, notwithstanding this showing, was permitted, over defendant's objection, to examine the jurors touching their interests in the insurance carrier.

Clearly it is the right of the plaintiff to have ascertained whether there is an insurance carrier for the purpose of qualifying the jury, and, if so, his right is to ascertain whether jurors are interested by reason of connection with such company.

In Citizens' L., H. & P. Co. v. Lee, 182 Ala. 561, 62 So. 199, it was remarked that if the trial court and counsel for plaintiff knew none of the jurors were interested, any examination would be improper, or in bad faith, merely designed to prejudice the case by injecting the insurance company as the party to pay. We approve this announcement. But since that decision, section 8662 of the Code has been enacted, conferring on the parties the right to examine jurors touching their interests, etc. Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 130 So. 807; Mays v. State, 218 Ala. 656, 120 So. 163.

In the face of this statute we cannot hold the defendant may take some other method of proving the qualifications of the jurors, cutting off this statutory right to qualify them in the usual manner.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.