25 So.2d 174

## SLOSS–SHEFFIELD STEEL & IRON CO.
## v. ALLRED et al.

### 6 Div. 148.

Court of Appeals of Alabama.

May 15, 1945.

Rehearing Denied June 26, 1945.

London & Yancey, Chas. W. Greer, and Geo. W. Yancey, all of Birmingham, for appellant.

Clifford Emond, of Birmingham, for appellees.

RICE, Judge.

This was a suit, resulting in a verdict by the jury, and judgment rendered thereon, in favor of appellees, plaintiffs, for $300 damages done to their automobile in a collision between it and a truck belonging to appellant, and driven at the time by one of its agents or servants while acting within the line and scope of his employment.

The complaint was in two counts; the first being, essentially, in words and figures as follows, viz.:

"Plaintiffs claim of the defendant the sum of Three Hundred Dollars ($300.00) as damages for that, heretofore on to-wit, the 3rd day of November, 1943, an automobile belonging to the plaintiffs was being driven along and upon a public highway in the City of Birmingham, Jefferson County, Alabama, to-wit, 10th Avenue North at the intersection of Coosa Street, and at said time and place an agent, servant, or employee of the defendant, while acting within the line and scope of his employment as such, ran a motor vehicle into, upon or against the automobile of the plaintiffs and as proximate result thereof plaintiffs' said automobile was injured and damaged as follows: (Here follows catalogue of damages).

"And plaintiffs aver that all of the said injuries and damages to their automobile aforesaid and the resultant loss of the value of said automobile to the plaintiffs was proximately caused by the negligence of the agent, servant or employee of the defendant while acting within the line and scope of his employment as such in and about the operation and control of the motor vehicle driven by him at the time and place aforesaid."

The second count of the complaint submitted to the jury is in exactly the words and figures of the first, except that there is substituted for the last paragraph thereof the following, viz.: "And plaintiffs aver the said agent, servant or employee of the defendant, while acting within line and scope of his employment as such, wantonly injured and damaged the automobile belonging to plaintiffs by wantonly running the said motor vehicle driven by him at said time and place into, upon or against plaintiffs' said automobile."

The only plea was the general issue.

■ It being understood that the first of the two counts we have quoted was denominated "B.", and the second, "C.", we here set out, as being in all things correct and informative, the following portion of the trial court's oral charge to the jury, viz.: "And count B is drawn on what is known as simple negligence, and count C is that of wantonness. The pleading is the general issue, that is to say, they (appellant—defendant—we interpolate) deny the material averments of each count B and C, and there is no question of subsequent or contributory negligence involved since it was not pleaded here. The general issue denies the allegations of each count, B and C, and that means to say it requires proof, and when I use that expression in a civil suit, I mean to reasonably satisfy your minds, from the evidence, of the truth of the material allegations, of B or C, proven to your reasonable satisfaction, as the case may be."

■ Appellees' evidence was to the effect that their car, loaned to and driven by the father of Ernest Earl Allred, was in a funeral procession travelling east on 10th Avenue, North, in the City of Birmingham. And that their car was in the act of crossing Coosa Street—which runs north and south and intersects 10th Avenue, North—and after it was already into and crossing the said intersection—appellant's cement mixing truck was driven by one of its employes, engaged in the line and scope of his employment, North on Coosa Street and into the said intersection with 10th Avenue, North, at the rate of speed of 35 or 40 miles an hour, and into or against or upon the side of the car belonging to appellees—completely destroyed it, or at least rendering it practically worthless (at any rate, no question is here presented as to the excessiveness vel non of the damages awarded by the jury). Fur-

ther, that at the time their car was struck by appellant's truck, said car was a little more than half across the intersection; and that appellant's truck did not slow up or slacken its speed before and until the impact.

The evidence on behalf of appellant was, essentially, that its truck entered the intersection referred to at a speed of only about 10 or 12 miles an hour, and that the car belonging to appellees was driven directly in front of same, under circumstances and conditions that rendered it impossible for appellant's said truck driver to avoid the collision.

It will thus have appeared that a question for the jury was presented by the conflicting evidence.

As appellant's counsel remark: "There was thus squarely presented a situation where the plaintiff (appellees),—as represented by the driver of their car, we interpolate—a member of a procession, and the defendant. (appellant), an ordinary traveller, the one going East and the other going North, approached a street intersection controlled by a traffic light at approximately the same time, a collision resulting."

■■ Before we go further, we might observe that if the evidence on behalf of appellees—as we have noted hereinabove —should be believed in the required way by the jury, it would have been, and would be, their duty to return a verdict in favor of the appellees—regardless of any observations we may hereinafter make. Duke v. Gaines, 224 Ala. 519, 140 So. 600. Because we think the law is as set forth in the third and fourth headnotes to the report of the case of Duke v. Gaines, supra, in 224 Ala. 519, 140 So. 600, viz.: "3. Automobile driver may not, ordinarily, assume that intersection is clear, simply because of appearance of green traffic signal light." And "4. Traffic signal lights do not relieve autoists of general duty to operate automobiles with careful and prudent regard for safety of others."

While, as noted above, there was no plea of contributory negligence in the case, yet appellant claimed, through its testimony, that it was guilty of no negligence at all, and that whatever damage appellees suffered was the direct, proximate, result of their own agent—to so denominate the man who had borrowed and was driving their car—in failing or refusing to obey the law governing the situation surrounding the collision between their car and appellant's truck.

Without being more specific we are of the opinion that the conflicting testimony was, on each side, of sufficient weight to sustain the respective theories of liability, vel non, of the parties—appellant (defendant) and appellees (plaintiffs). The situation posed a question for the jury.

As appellant's counsel put it: "The defendant (appellant) took the position that because of Section 5929 (a) (b) (c) and (d) of the City Code of Birmingham of 1930, it was the duty of the plaintiff (appellees) to stop in obedience to the red light shining in his direction. Plaintiff (appellees) contended that by virtue of Section 5920 of the same Code, the defendant could not pass through the procession, that it was therefore the defendant's duty to stop even on the green light while the plaintiff was privileged to go through on the red light." (And maybe we ought to make clear, before we go further, that the undisputed evidence was to the effect that plaintiff's (appellee's) car entered the intersection where the collision occurred on a "red light" as same is described in Section 5929 of the City Code of Birmingham of 1930; while defendant's (appellant's) truck entered said intersection on a "green light," as described in the same section).

As appellant's counsel go on to say: "The defendant took the position that because of Section 5929 (a) (b) (c) and (d) of the City Code of Birmingham of 1930, it was the duty of the plaintiff to stop in obedience to the red light shining in his direction. Plaintiff contended that by virtue of Section 5920 of the same Code,— the defendant could not pass through the procession,—that it was therefore the defendant's duty to stop even on the green light while the plaintiff was privileged to go through on the red light."

Appellant's counsel go on to remark:

"The trial court gave the jury a clear and unmistakable idea of his view as to which of the two ordinances controlled the situation. In his oral charge he stated in part: 'Consequently I say to you that if a funeral procession is wending its way down the street it is up to the people in automobiles to take due notice and to govern themselves accordingly, and not to drive into a funeral procession, because it

188

was necessary to preserve the status quo to prevent or minimize accidents. That is my concept of the matter. Consequently, even though if you get the green light to go ahead which would carry you right across the funeral procession, or right with it, I don't think it gives you that right, if there is a funeral procession wending its way across the intersection at that particular time.'

"Attorney(s) for the defendant (appellant) excepted to the foregoing portion of the court's charge. In addition he (they) requested, and the court refused to give, numerous written charges stating in effect that it was the duty of the driver of the plaintiff's car to stop at the intersection in obedience to the red traffic light. The refusal to give these instructions, together with (giving) that portion of the court's oral charge above quoted, constitute the basis of the assignments of error here argued."

We merely observe that we are unable to find any provision of the laws of the City of Birmingham, or others, controlling, which exempts one travelling as the driver of appellee's car—in a funeral procession—from obeying the terms of Section 5929 of the Birmingham City Code of 1930.

And we do not see how one could be held culpable for driving into and across a funeral procession, on a street intersection in a big city, with nothing— so far as the testimony shows—to put him on notice that it was a procession—funeral or otherwise—and when he stoutly affirms he did not know it was a procession.

So, it is our conclusion, and we hold, that the trial court erred in giving to the jury the portion of his oral charge which we have quoted hereinabove.

Likewise it was error, and of course prejudicial, to refuse to give to the jury appellant's written requested charges 9, L., G., 8, A., F., 7, B., D., and 11.

It would follow that the trial court was in error in refusing to grant appellant's motion to set aside the verdict of the jury and award it a new trial.

For all these errors the judgment is reversed and the cause remanded.

Reversed and remanded.

BRICKEN, P. J., dissents.