105 So.2d 87

Joseph PAPPA, pro ami,

v.

Dr. G. W. BONNER.

Louis V. PAPPA

v.

Dr. G. W. BONNER.

5 Div. 616, 617.

Supreme Court of Alabama.

July 24, 1958.

Rehearing Denied Sept. 25, 1958.

R. C. Wallace, LaFayette, D. T. Ware, Roanoke, and Walker & Walker, Opelika, for appellants.

Paul J. Hooton, Roanoke, and Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

GOODWYN, Justice.

These are appeals by the plaintiffs in two cases (consolidated for trial below and submitted here on one record) from judgments rendered on jury verdicts following the giving of affirmative charges, with and without hypothesis, for the defendant in each case. In 5 Div. 616 the plaintiff is Joseph Pappa, a minor about 5 years of age, who sues by his next friend, Louis V. Pappa, his father. In that case damages are claimed for injuries allegedly sustained as a result of the negligence of the defendant doctor or of his nurses, during or following an operation for removal of plaintiff's tonsils. In 5 Div. 617 the father, Louis V. Pappa, seeks recovery of damages for doctors', medical, nursing and hospital bills and for loss of services of his son growing out of the same occur-

rences. The defendant in each case is Dr. G. W. Bonner, who performed the operation and also operated the hospital involved.

The complaints in both cases are essentially the same except for appropriate changes in plaintiffs and the elements of damages claimed. Each complaint originally consisted of counts 1 through 8. By amendment, counts 2–A, 2–B and 9 were added to each complaint. The defendant filed a plea of the general issue in each case. The cases were then tried together upon all of the counts. The counts in each complaint may be summarized as follows:

Count 1 is based upon the defendant's negligence as a physician and surgeon in the performance of the operation.

Count 2 is based upon defendant's negligence as a physician and surgeon in failing to observe and treat the child following the operation or to have one of his nurses observe and treat him.

Count 3 is based upon the breach of a contract between the child's father and the defendant as a physician and surgeon, which contract, allegedly made for the child's benefit in the child's suit, obligated defendant to perform the operation and to treat the child afterwards until he recovered.

Count 4, like Count 3, is based upon a breach of contract, with the additional allegation that defendant breached the contract by failing to observe and treat the child following the operation.

Count 5 is based on defendant's negligence as the operator of a private hospital for failure of either the defendant or his nurses to attend the child following the operation.

Count 6 is based upon a breach of contract by the defendant as the operator of a hospital, it being alleged that the contract to render medical treatment was breached in that neither the defendant nor

any of his nurses attended the child while he was under the influence of an anesthetic following the operation.

Count 7 is based upon breach of contract against the defendant as the operator of a hospital, it being alleged that the contract to render medical treatment was breached in the improper administration of ether to the child.

Count 8 is based upon the defendant's negligence in the giving of ether to the child during the operation.

Count 2–A is the same as Count 2 and is based upon the defendant's negligence, but alleges that the negligence consisted in the defendant's negligent failure to observe and treat the plaintiff following the operation.

Count 2–B is the same as Count 2, but alleges that defendant's negligence consisted in his failure to have the child treated and observed by his nurses following the operation.

Count 9 alleges that the defendant, as a physician and surgeon, committed an assault and battery on the child while operating on him for the removal of his tonsils in that, without the prior consent of the child's parents, he removed the child's adenoids as well.

The evidence in the case, including that of expert medical witnesses, the parents of the child and the nurses at the hospital, is voluminous. When the evidence was all in the trial court gave affirmative charges, both with and without hypothesis, in favor of the defendant in both cases. Plaintiffs then filed motions for new trials, based principally on the giving of these charges, which motions were overruled. These appeals followed.

The decisive question to be resolved on this appeal is whether there is any evidence, or reasonable inference therefrom, that is, a "scintilla" of evidence, that the defendant's negligence, or the negligence of his nurses under the doctrine of respondeat superior, was the proximate cause of the child's condition. It does not appear to be seriously contended that there was not sufficient evidence on the issue of negligence, both on the part of defendant and the nurses employed by him in the hospital, to have required submission of that issue to the jury. In this connection it should be noted that the plaintiffs do not seem to insist seriously that there was negligence in the performance of the operation itself. They principally rely on negligence which they contend occurred in failing to properly care for the child immediately following the operation, particularly during the critical first four hours. The disputed question is whether there is a "scintilla" of evidence showing that such negligence proximately contributed to the child's condition.

The rule of our cases in malpractice suits is that there must be something more than a mere possibility—something more than one possibility among others—that the negligence complained of was the cause of the injury. There must be some evidence to the effect that such negligence probably caused the injury. McKinnon v. Polk, 219 Ala. 167, 168, 170, 121 So. 539. However, this does not eliminate the effect of Alabama's "scintilla" rule. If there is a scintilla of evidence that the negligence complained of probably caused the injury there is presented a question of fact for the jury's determination. Carraway v. Graham, 218 Ala. 453, 460, 118 So. 807. See, also, Piper v. Halford, 247 Ala. 530, 25 So.2d 264; Torrance v. Wells, 219 Ala. 384, 390, 122 So. 322; Thaggard v. Vafes, 218 Ala. 609, 612, 119 So. 647.

The rule in Alabama is that in civil cases "the question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish 'a mere "gleam," "glimmer," "spark," "the least particle," the "smallest trace"—"a scintilla"'' in support of the theory." Alabama Great Southern Railroad Company v. Bishop, 265 Ala. 118, 123, 89 So.2d 738, 743.

And we have said that, "in considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to plaintiff, regardless of any view we may have as to the weight of evidence; and must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable." Duke v. Gaines, 224 Ala. 519, 521, 140 So. 600, 601.

Considerable time has been spent and painstaking care given to a consideration of the evidence in this case. We see no necessity of detailing all of it which might have a bearing on the issue of proximate cause. It is sufficient to state that, in our view, the defendant's extra-judicial admission against his own interest, considered in connection with other evidence showing the lack of post-operation care and the serious illness of the child during the absence of such care, furnished at least a scintilla of evidence on the issue of proximate cause, thus requiring a submission of that issue to the jury.

The tendency of the evidence on behalf of plaintiffs was that no pre-operation examination was given the child; that in preparing the child for the operation he was given a shot of one-tenth grain of morphine although the proper dose for a child of his age was only one-sixteenth grain; that the shot of morphine was given too near the time of the operation, thus prolonging the period of unconsciousness after the operation; that the child was left completely unattended for over four hours immediately following the operation; that during this period no nurse or doctor entered the room; that this was a critical period demanding the utmost attention; that the accepted practice in the community called for constant medical attention at least until the patient is revived; that the child suffered from anoxia (general lack of oxygen) immediately after the operation due to a blockage in his throat which permanently damaged his central nervous system; and that if proper attention had been given to this condition immediately following the operation the child's injuries would not have resulted. The doctor who attended the child the next morning after the operation testified that the child's central nervous system was already injured at that time. He was asked this question: "Then of all the things before that, why, when you get down to number five (anoxia) that is the only one that in your opinion could have caused his injuries, is it, doctor?" He answered: "Well, it is the most logical." He also later stated: "In my opinion the cause of this central nervous system impairment, and this is an opinion, was anoxia."

There was testimony that the child developed respiratory trouble which was noticeable to a layman before 2:00 p. m. on the day of the operation, which was concluded about 12:05 p. m. The father and mother of the child were in the hospital room with him following the operation. The father testified as follows:

"Q. Describe his condition at that time as you first began to watch him after he was returned to the room. A. Well, his face was swelling up and his breathing started becoming heavy, sort of like a snore.

"Q. When did his breathing start to become heavy? A. Shortly after he was brought in the room.

"Q. How long after, to the best of your recollection? A. I would say within the hour."

The testimony of the child's mother closely parallels that of the father. She testified that Joseph was brought back from the operation about 12:00 o'clock by a nurse, who put him on the bed and told the witness, "Let him sleep"; that he wouldn't be sick if he slept the ether off. Mrs. Pappa testified as follows:

"Q. Did you and your husband stay in the room continuously? A. Yes, sir. I went out once, about four o'clock in the afternoon.

"Q. From twelve until four you were in the room continuously? A. Yes, sir.

"Q. During that time did you observe Jodie? A. Yes, sir.

"Q. Well, what condition—did you notice his condition there? A. When they brought him in the room from the operating room, he was swollen.

"Q. Well, did you continue to observe him until four o'clock when you went out of the room? A. Yes, sir.

"Q. Did you notice anything about him, and if you did, what did you notice about him? A. He lay there breathing heavy and his little lips were looking blue around his mouth.

"Q. About what time did he start to breathing heavy, after he was brought back into the room? A. Not too long after, maybe an hour or an hour and a half, something like that."

She further testified that no nurse entered the room until sometime between 4:30 and 5:00 o'clock.

Bearing on the question of relevancy of such testimony of the child's parents, we quote the following from Stephens v. Williams, 226 Ala. 534, 538, 541, 147 So. 608, 612:

"We fully recognize that professional testimony alone should be looked to for matters of fact or opinion peculiarly within their professional learning and experience. Such evidence is to be taken in connection with other evidence of facts within the knowledge of witnesses testifying thereto. * * *

*    *    *    *    *    *

" * * * We would not say that a wife, though no expert, cannot observe changes of appearance, state of breathing, and other details in evidence, and so form an intelligent opinion such as stated."

In that case the plaintiff's evidence tended to show that the defendant doctor performed a tonsillectomy without making a pre-operation examination and that failure to do so resulted in the patient's death. The patient, who was the plaintiff's husband, died of acute dilation of the heart following the operation.

From Stephens v. Williams, supra, is also the following:

"It is well settled in our cases that the doctrine of res ipsa loquitur does not apply in malpractice cases; the bad or unfavorable result, standing alone, unless in cases of palpable misconduct within common knowledge, is not evidence of negligence which will shift the burden to defendant.

"The evidence must afford a reasonable inference of want of ordinary skill or diligence as a proximate cause of such results. Dabney v. Briggs, 219 Ala. 127, 121 So. 394.

"This does not mean the fact of death [serious illness] and the circumstances of it are not evidence to be considered along with the other evidence in passing upon the question of negligence."

There was ample evidence that the child became seriously ill during the period following the operation when he was not given care by either the doctor or any of his nurses.

The defendant's operating nurse testified that when the defendant returned to the hospital about 7:00 p. m. on the day of the operation he was angry with the nurses and said: "That the temperature and everything should have been taken, that the nurses should have gone in and checked the patient and that his position should have been changed and that the fault lay in the nurses because of the condition of the patient because we had not given it adequate care."

█ It should be borne in mind that the defendant himself was qualified to testify as an expert on medical matters. As al-

ready noted, there is ample testimony that neither he nor any of his nurses attended the child from the time of the operation about 12:00 o'clock noon until that afternoon about 4:00 o'clock; and, further, that the child became seriously ill during that period. It is our view that the admission by the defendant, qualified as he was to give expert medical testimony, that the fault lay in not giving the child adequate care, coupled with the other evidence, was sufficient, at least under the "scintilla rule," to require submission to the jury of the proximate cause issue. From 70 C.J.S. Physicians and Surgeons § 62, pp. 1008–1009, is the following:

"The expert testimony which establishes plaintiff's prima facie case may be that of defendant, and extra-judicial admissions of defendant have the same legal competency as direct expert testimony to establish the critical averments of the complaint, provided the statement constitutes an admission of negligence of lack of the skill ordinarily required for the performance of the work undertaken; an extrajudicial statement amounting to no more than an admission of bona fide mistake of judgment or untoward result of treatment is not alone sufficient to permit the inference of breach of duty. * * *"

See, also, Lashley v. Koerber, 26 Cal.2d 83, 156 P.2d 441.

The defendant relies on the case of McClusky v. Duncan, 216 Ala. 388, 113 So. 250, 252, in support of his contention that the evidence of his admission of fault is not sufficient for submission of the case to the jury. We do not think that case can be taken as authority for defendant's position. There the plaintiff sued to recover damages for personal injuries sustained from an electric shock which she received when coming in contact with an uninsulated portion of an electric wire as she was attempting to turn on an electric light in the toilet of defendant's public store building. The defendant was the proprietor of the store. The evidence established that the bulb in the toilet customarily burned at all times during business hours but that no one in the store had become aware that it was not burning at the time in question. It was held that the evidence showed that neither the defendant's storekeeper nor any of his employees had reason to believe that the light was not burning as usual when plaintiff entered the toilet and that they were not negligent in failing to discover such fact. The court then had this to say:

"Some stress is laid upon the evidence to the effect that defendant, when approached by plaintiff in reference to the matter, acknowledged fault in that the light should have been burning. But, if there was no actionable negligence as a matter of law, such expression on his part would not suffice to establish a cause of action, but would be attributable merely to an erroneous conclusion."

What was there said does not mean that a defendant's admission of fault cannot be used to make out an element of the plaintiff's case. In the McClusky case the court concluded there was no actionable negligence. Here, there is evidence showing negligence. The question seriously disputed is whether there is any evidence, or reasonable inference therefrom, showing that the child's condition proximately resulted from such negligence. It seems to us that the defendant's extrajudicial admission furnishes at least a scintilla of evidence on that issue.

Since we have concluded that a reversal is required there is no occasion to discuss the effect of giving both the peremptory charges and the hypothesized charges in these cases, nor any question concerning the trial court's refusal to permit plaintiffs' counsel to argue the cases to the jury on the issues presented by the hypothesized charges.

One other point merits mention. Dr. Nolan, over plaintiffs' objection, testified

**192**

to an opinion expressed by Dr. Gay during consultation concerning the child's condition that "Dr. Gay was of the opinion that the child had polio." The question of the admissibility of such evidence was recently considered in the case of Clark v. Hudson, 265 Ala. 630, 635, 93 So.2d 138, where it was held that such evidence is hearsay and not admissible. See, also, Prince v. Lowe, 263 Ala. 410, 82 So.2d 606.

We think the evidence required submission of the cases to the jury upon those counts charging negligence of the defendant and his nurses in the post-operation care of the child. Since the affirmative charges were given generally and since the cases will be retried we will not attempt on this appeal to decide whether the affirmative charges were properly given as to the other counts of the complaints.

Reversed and remanded.

All the Justices concur.