160 So.2d 507

**Nora Pearl BLILEY**

v.

**STATE.**

**8 Div. 890.**

Court of Appeals of Alabama.

Jan. 7, 1964.

Rehearing Denied Jan. 28, 1964.

Glenn F. Manning, Huntsville, for appellant.

Richmond M. Flowers, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

CATES, Judge.

Mrs. Bliley appeals from a judgment under a general verdict finding her guilty of second degree manslaughter. Punishment was fixed at twelve months imprisonment in the county jail.

She was accused of second degree murder in killing her five year old daughter, Teresa Lee: the indictment was put in six counts.

On trial, after the State rested, the defense moved to require an election between various counts and the case went to the jury only on Counts 1, 2, and 3.

Count 1 averred the quo modo, as hitting or striking the child with a belt buckle so as to kill her; 2, as by starving her; and, 3, as by beating or striking her with a belt.

## I.

We consider there was sufficient evidence to support a verdict of guilty under Counts 1 or 3, but not as to the legal elements under the charge in Count 2.

The trial judge was given the opportunity to rule upon this point both by the motion to elect and by the defendant's request for the affirmative charge as to Count 2.

To prove murder by starvation, under the established cases, the prosecution must prove to the required degree that with malice aforethought the person charged (1) is under a duty to feed, (2) has control of the food, and (3) denies the food to the deceased.

Thus it is that the actual cases on this score are few and far between. They mainly involve as victims inmates in places of detention such as jails or poorhouses or sailors. This, of course, because the isolation is a provable circumstance.

There was some evidence here that the Bliley girl was malnourished, and that she snatched food from the refrigerator when her mother was away from home. Yet this latter proof also showed that her brothers and sisters took the icebox snacks away from the child.

On cross-examination some State's witnesses testified without contradiction that Mrs. Bliley had taken the child to an Army doctor in Germany who considered the child retarded, i. e., a symmetrical dwarf. This physician advised her that the child's eating habits would become more normal if she were denied between-meal feeding.

Agency of the defendant in death by starvation requires proof of (a) duty—here shown by the mother-child relationship; (b) having from her husband the means to feed—not shown technically; and (c) the refusal to feed.

Then it would be incumbent under Count 2 to adduce that this neglect was the efficient cause of death. There must be positive proof of withholding sufficient food to maintain life. Reg. v. Bubb (1850), 4 Cox C.C. 457.

We extract from the opinion of Mr. Justice Haralson in Pallis v. State, 123 Ala. 12, 26 So. 339 (a mother left a new-born babe beside the road covered only with straw and leaves) :

" 'If the exposure or neglect of an infant or other dependent person, resulting in death, is an act of mere carelessness, wherein danger to life does not clearly appear, the homicide is only manslaughter; whereas, if the exposure or neglect is of a dangerous kind, it is murder. For example, if from an infant of tender years the person under obligation to provide for it *willfully withholds needful food* or any other needful thing, though not with intent to kill, and by reason thereof the child dies, he commits murder.' 2 Bish. New Cr. Law, § 686." (Italics added.)

Here the proof to support Count 2 was a speculative gap conjectural only. Thus, under the evidence, we can envision that the malnutrition could have come from metabolic flaws affecting nourishment or from psychotic refusal of the child to eat. The criminal agency of the parent is presumed merely from the emaciation of the child. McClinton v. McClinton, 258 Ala. 542, 63 So.2d 594, headnotes (4) and (5). This is not enough.

## II.

There is another ground for reversal in this case. The State's main witness was William T. McVay, a toxicologist whose qualifications were accepted by the trial judge. During the course of his testimony, he was allowed, without objection, to read from a written report made by two physicians specializing in pathology, Drs. Walker B. Sorrell and Lynn Ogden.

This was a long report covering the examination by these doctors of various organs and tissue shipped to them from the

Redstone Arsenal Hospital where the child was pronounced dead.

After Mr. McVay's reading the report, his testimony continues as follows:

"Q * * * Is there any indication in this report of any, or is there any mention of[,] do you note[,] any term in this report that would indicate a disease of any kind?

"MR. MANNING: Your Honor, we object to this testimony. The report is the best evidence.

"THE COURT: I will overrule and allow him to answer the question.

"MR. MANNING: We think the report is the best evidence and we also would like to assign the additional ground that the witness is not shown to be qualified to interpret the report with respect to disease.

"THE COURT: I will overrule and allow him to answer the question.

"MR. MANNING: We except.

"A No, it does not show any description of any disease process within the tissues that he examined." (Bracketed matter added.)

Taking first McVay's answer, we consider it was prejudicial to the defendant since it altogether ruled out a natural cause of death.

Next we note that the report was offered as a written document speaking for itself. Since it was not a direct object self compassing all its evidence (as is an x-ray photograph), its interpretation could be partly within the realm of expert testimony but not necessarily totally so.

In other words, the choice of words of Drs. Sorrell and Ogden could involve questions not only of medicine but also of ordinary semantics, e. g., the interpretation of the adverb "possibly" in contrast with "probably." Cross-examination should be available to a defendant as to any witness's testimony.

The fact that the defense allowed the report to come into evidence, of course, waived Mrs. Bliley's opportunity to cross examine Drs. Sorrell and Ogden.

But for the court to allow Mr. McVay to testify as an expert as to the meaning of the words used by Drs. Sorrell and Ogden would mean that there would be only cross-examination of "McVay on Sorrell and Ogden."

This involves two considerations: (1) the realm of the medical expert and (2) the realm of the effect of words employed. In this latter aspect, McVay, as an expert, could, by reason of either any supposed deficiency of his training in the English language or of Sorrell and Ogden not being available for cross-examination, put an impenetrable gloss upon the report. Cross-examination would be blunted by two laminations of evidence.

Except under the unorthodox doctrine of Great Northern Ry. Co. v. Sunburst Oil Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254 the prevailing opinion in Prince v. Lowe, 263 Ala. 410, 82 So.2d 606, being but an announcement of prospective intention, is not a true common law precedent.

The later cases of Clark v. Hudson, 265 Ala. 630, 93 So.2d 138, and Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87, however, adopt Prince v. Lowe, supra, and apply it to actual controversies. Thus these "decisions" compel our judgment. Code 1940, T. 13, § 95.

We extract pertinently from the opinions of these cases:

"The last point to be considered is the exclusion of the testimony of Dr. Palmer, orthopedic surgeon, of what Dr. Stickley, radiologist, not a witness in the case, had told him about the plaintiff's injuries. Dr. Palmer had some x-rays taken of plaintiff's back and requested Dr. Stickley to give him an opinion with respect to these x-rays and interpret them for him. This Dr. Stickley did, and his written opinion was a part of Dr. Palmer's files as

a part of the history of the case. On seasonable objection by the plaintiff the court excluded this testimony as hearsay. The holding was proper. The recent case of Prince v. Lowe, 263 Ala. 410, 82 So.2d 606, settled the law in this state that testimony of this character as well as testimony of what a board or committee of examiners might have decided with respect to a person's injuries was hearsay. * * *"—Clark v. Hudson, supra.

" * * * Dr. Nolan, over plaintiffs' objection, testified to an opinion expressed by Dr. Gay during consultation concerning the child's condition that 'Dr. Gay was of the opinion that the child had polio.' The question of the admissibility of such evidence was recently considered in the case of Clark v. Hudson, 265 Ala. 630, 635, 93 So.2d 138, where it was held that such evidence is hearsay and not admissible. See, also, Prince v. Lowe, 263 Ala. 410, 82 So.2d 606."—Pappa v. Bonner, supra.

The judgment below is due to be reversed and the cause remanded.

Reversed and remanded.