253 So.2d 23

Giles KELLEY

v.

GENERAL ELECTRIC COMPANY,
a Corp., et al.

7 Div. 832.

Supreme Court of Alabama.

Sept. 23, 1971.

Simmons, McCrary & Cardwell, Gadsden, for appellee General Electric Co.

Martin, Balch, Bingham, Hawthorne & Williams and Edward S. Allen, Birmingham, and Inzer, Martin, Suttle & Inzer, Gadsden, for appellee Alabama Power Co.

John H. Morrow, Birmingham, for appellee Oberle-Jordre Co.

Gary F. Burns, Gadsden, for appellant.

**516**

PER CURIAM.

Plaintiff (appellant) filed suit in the Circuit Court of Etowah County against defendants (appellees), General Electric Company and Alabama Power Company, to recover damages for personal injuries when a chain fall, in use as hereinafter noted, fell on him. Count one of the complaint is based on negligence and count two on wantonness charged to said defendants. The trial court directed the jury to return a verdict for each defendant. This appeal arises from a judgment entry consonant with the verdict.

During the progress of the case, Alabama Power Company filed a complaint against a third party, The Oberle-Jordre Company, Inc. and brought said company in as a third party pursuant to Act No. 854, Acts of 1965, Regular Session, page 1591. The jury, at the direction of the trial court, also returned a verdict for the third party defendant. Judgment was entered responsive to this verdict.

Appellant (plaintiff) complains here that the directed verdicts for the original defendants at least violated the scintilla rule of evidence and contends that these two judgments should be reversed and the cause remanded. Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87; Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687.

Each count against said original defendants alleges that the plaintiff, a millwright in the employment of the third-party defendant, was engaged in removing a pin holding a pole in an electric generator being installed at the Alabama Power Company Lock 3 Dam in St. Clair County, Alabama; that the generator was built by General Electric Company and was being installed on the property of Alabama Power Company at said Lock 3 Dam. The complaint further alleges that a chain fall, used in removing the pin holding the pole in place, was connected to a choker without the use of a safety hook; that said choker was connected to a hook on the end of a crane, the property of Alabama Power Company; and that said equipment was being used in an effort to remove said pin holding said pole in place in said generator.

Appellant further asserts in his complaint that said chain fall was connected to said choker under the control of defendants' agents, servants or employees, acting within the line and scope of their employment, and was not a reasonably safe way to connect said chain fall for that there was no safety hook on said chain fall to prevent it from coming loose; that defendants' agents, servants or employees, acting within the line and scope of their employment, knew that it was necessary that plaintiff and his fellow employees work under said chain fall; that by reason of said unsafe conditions, it was likely or probable that one of them would be injured; and that, notwithstanding such knowledge, defend-

ants' agents, servants or employees, acting within the line and scope of their employment, negligently injured the plaintiff by negligently allowing said unsafe conditions to remain uncorrected, thereby causing the said chain fall to fall on plaintiff whereby he was injured. The second count alleges practically the same conditions of employment and that said defendants, acting as aforesaid, wantonly injured plaintiff.

It appears from the transcript that only three witnesses testified, all in person and at the instance of plaintiff. One witness was plaintiff; the second a Mr. Bain who, along with plaintiff at the time of the injury and prior thereto, was an employee of the third-party defendant. A Dr. Lonnergan was a medical witness for plaintiff. The defendants did not offer any evidence. Plaintiff offered depositions in answer to interrogatories propounded to Alabama Power Company.

The evidence is clear that the third-party defendant, Oberle-Jordre Company (which we will call Oberle) was an independent contractor engaged by Alabama Power Company (we will hereafter refer to as the Power Company) under a written contract to install the generator which the Power Company purchased from General Electric Company (which we will call General Electric).

It further appears that Oberle submitted a proposal to the Power Company which formed the basis of a written contract between the parties for installation of the generator and other equipment. We think here that we should quote some of the pertinent provisions of the contract elucidating some of the pertinent duties of the parties.

"Installation of generators shall be in accordance with General Electric Company supervision and NEMA Standard Publication No. LG–3, 1959, dated November, 1959.

"* * *

"B. *Manufacturer's Erection Engineer.* Services of Newport News erection engineer to supervise the field installation of the turbines and General Electric erection engineer to supervise the field erection of the generators.

"* * *

"A. *Supervision.* Competent and qualified supervisory personnel (except Newport News and General Electrics' erection engineers) as may be required to complete the erection of the units to meet the Purchaser's schedule requirements."

The latter provision "A" appears under

**"ITEMS TO BE FURNISHED BY THE CONTRACTOR."**

In addition to the above provisions, Oberle contracted to perform as follows:

"Item 1–1

"We will furnish competent and qualified workman of all crafts (except electricians), skilled and unskilled, including foremen and job superintendent. The necessary number of workmen will be provided to complete the work to meet your schedule requirements. * * *

"* * *

"The work covered by these specifications consists of furnishing all supervision, labor, tools, equipment and materials (except any supervision, labor, tools, equipment or material that is specifically mentioned herein as being furnished by the Purchaser) for the installation (including unloading, transporting and storing as specified herein) of * * * Generators * * * in accordance with the Instructions to Bidders and General Conditions, these specifications, schedules, and drawings, all of which are made a part hereof, and including such detail drawings in explanation as may be furnished by the Purchaser from time to time during the prosecution of the specified work."

Paragraph 82 of the Instructions to Bidders and General Conditions, incorporated

in the contract between the Power Company and Oberle, provides as follows:

"82. It is understood and agreed by the parties hereto that the Contractor, in doing the work herein called for, shall not act as an agent or employee of the Purchaser, but shall be and act as an independent contractor, and be free to perform the work covered by the contract by such means and in such manner as the Contractor may choose, having supervision over his employees and control and management over his equipment which shall be the responsibility of the Contractor.

"It is also understood and agreed that the Purchaser may at all times have the right to have its engineers or other authorized representatives inspect the work being done under this contract and to ascertain whether all work is being done in accordance with these Instructions to Bidders and General Conditions, and the Specifications and drawings, not for the purpose of controlling the method and manner of the performance of the work, but in order to assure that all work meets the requirements of the aforesaid documents and also to assure that work is prosecuted at a rate consistent with the overall schedule of the project."

■ Mr. Perry Dale Bain, an iron worker in the employment of Oberle at the time of the injury to appellant, was called as a witness for plaintiff (appellant).

This witness testified that at the time he was in a hole, about the center of the dam, below the surface of the water, where and when an electrical pole, about twelve inches square and about two and one-half to three feet long—just a big heavy piece of metal weighing about one thousand pounds—was being removed from the generator. It was wedged in position with keys, one opposite the other. They were long, slender, and tapered like a wedge about one-half inch in width. An "I" bolt was welded to the top of the key, "to give something to catch hold." An overhead crane was moved over the pole and "a set of chainfalls on this." Describing the hookup, the witness testified:

"A Well, we had overhead crane block right over the pole. It has a hook in it. We had a one inch sling or a cable, sling cable, choker, we call it, and it was going through the hook, the bite of it was going through the hook and the two eyes were at the bottom and the eye of the chainfall went through those two eyes."

A Gantry crane, belonging to the Power Company and operated by an employee of said company, was rolled into place or position over the pole that was to be pulled out. Dropping from the crane itself was a hook on its own cable. The witness testified further:

"Q Were you using a crane to take a strain on this or was the strain being taken with a chainfall?

"A With a chainfall.

"Q Now then, was there a safety latch or catch on the hook that is on the crane?

"A Right.

"Q And then, you had run, or somebody had run, a choker, a piece of cable, and it had an eye on both ends.

"A Right.

"Q Now then, tell the jury what the hook that hooked the chainfall on to the eye of the choker, what kind of hook was it.

"A It was just a hook, just a chainfall hook, it comes with the fall.

"Q Now, did it have a safety latch on it?

"A No, it didn't.

"Q Could you give your opinion as to how much the chainfall weighed, Mr. Bain?

"A Oh, three or four hundred pounds, I guess.

"Q Now then, describe what went on after you brought the crane into place, after the crane was brought in place, and the chainfall was hooked on it, what was the next step in removable of this?

"A Well, after we hooked it to the eye bolt that I had welded on, we proceeded to get up on the chainfall and put strain on the pin, on the key.

"Q That is, you pulled on the chainfall and took a strain on the key to the chainfall.

"A Right.

"Q It was going from the pin through the chainfall to the crane up there. That was a straight line all the way up there.

"A Right."

When the pin released, it sprang up. The hook came loose from the choker and the chain fall fell on Mr. Kelley, the plaintiff.

Mr. Bain testified further:

"Q From your experience that you have had would this chainfall have come down on him if there had been a safety latch on the hook on the chainfall?

"A No, it wouldn't."

This witness testified that at the time the chain fall fell, the Power Company did not have any men in the hole; but prior thereto, Mr. McCullough, superintendent of the project for the Power Company, had been in the hole. At the time, one Hank Fazzone, employed as an erector by General Electric, was in the hole. When Mr. McCullough was in the hole, he hit on the pole with a hammer. At the time, Mr. Fazzone was helping, applying pressure in some way. Mr. Fazzone gave no orders.

We think that the gravamen of the complaint filed by appellant charges that the alleged, unsafe condition to which appellant was exposed, proximately resulting in his injuries, was created by the chain fall being hooked to a choker without a safety latch. The pivotal issue is whether or not the original defendants, the Power Company and General Electric, or either of them, acting through an agent, servant or employee within the line and scope of his authority, had any actual or assumed duty to assure the presence of a safety latch.

We think that the evidence fails to show any such duty, actual or assumed, on the part of either original defendant, by contract or otherwise, to see that the chain fall in use was equipped wtih a safety latch, the absence of which created the hazard charged in the complaint.

It appears from the evidence by plaintiff that the chain fall was the property of Oberle, the third-party defendant, supra, and that the chain assembly used in the hookup was rigged by Oberle's employees without the aid, counsel, or advice of the original defendants. A superintendent of Oberle directed the rigging of the chain assembly.

Mr. Hank Fazzone, employee of General Electric, was in the hole with plaintiff at the time of plaintiff's injury and held an air gun against the pin to induce vibrations calculated to loosen it. So far as the evidence reveals, such activity was the extent of Mr. Fazzone's participation. It is not shown that he gave any directions or assumed any authority with respect to rigging the assembly used to release the pin. Nor does it appear that he was authorized to direct or control the rigging. He was there as a representative of General Electric, at the instance of the Power Company, to supervise the field erection of the generator. The responsibility for installing the generator and doing the work with respect to such installation was on Oberle.

Oberle contracted with the Power Company, designated as the purchaser, to furnish competent and qualified workmen of all crafts, except electricians, skilled and unskilled, including foremen and job superintendents, to install the generators. This installation was to be in accordance with

General Electric's supervision. Oberle was an independent contractor, free to perform the work in such manner as it chose so long as it met its contract with the Power Company. It had full supervision over its employees and management of its equipment, "which was its responsibility."

An employee of the Power Company, whose name or identity does not appear in the record, was operating the crane to which the chain assembly was attached. It is not shown that he was operating the crane with authority of the Power Company, or with the knowledge or consent of said company or any of its agents authorized to give such consent. It does not appear from the evidence that there was any duty on the part of said Power Company to furnish a crane or a crane operator to release the pin. As we have pointed out, such responsibility was the contractual duty of Oberle.

The evidence fails to show that the crane operator performed any service or took any part in rigging the chain assembly, or that he knew the safety latch on the chain fall was missing. For aught appearing, the crane operator was a volunteer and performing a gratuitous service for Oberle.

The evidence shows that a superintendent of the Power Company was in the hole a few minutes before the chain fall came loose and fell on plaintiff; but there is no evidence to show that he gave any orders or took any part in pulling the pin to release the pole from its tightened position in the generator.

There were some spectators, employees of the Power Company, present and watching the operation, but there is no evidence that any of them took any part in the work or gave any advice or counsel with respect thereto.

We think it may be safely said that the pull of the crane set in motion the release of the pin. To that extent the crane operator participated in the operation. Mr.

Fazzone, whose duties were to supervise the installation of the generator rather than participate, performed a limited service that was confined to creating vibration in the pin to effect its release. But neither of these activities on the part of said persons created the hazard which was the product of the missing latch on the chain fall. It is not shown that the crane operator or Mr. Fazzone was guilty of any negligence or wantonness.

The efforts of plaintiff to charge General Electric and the Power Company with negligence or wantonness in creating the hazard is speculative and without factual foundation. Davis v. Birmingham Electric Company, 250 Ala. 98, 33 So.2d 355. As we have noted, supra, a contractual duty on the part of Oberle to install the generator appears from the documentary evidence. Performance of this duty was in progress when the chain fall swung loose. No hazard of the nature complained about existed prior to Oberle's commencement of its contractual obligation; and so far as the evidence reveals, it alone was responsible for the hazard.

It appears in the record, by admission of the parties, that Oberle paid workmen's compensation to plaintiff.

We conclude that General Electric did not assume any control or commit any interference in rigging the chain assembly for removal of the pin. In the absence of such evidence, the several cases cited by appellant in Proposition III of its brief are inapposite. The same may be said of the several cases that appellant cites with respect to the scintilla rule in Alabama.

■ The duty of the Power Company to keep its premises in a reasonably safe condition extended only to conditions existing when Oberle began its work on the premises, and not to conditions arising during the progress of the work Oberle undertook to do and for which Oberle was responsible. United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25 [5]; Sloss-Sheffield Steel & Iron Company v.

Edwards, 195 Ala. 374, 70 So. 285 [2]. Here the work was in progress when the hazard was created by the failure of Oberle to provide a latch on its chain fall.

We are unwilling to say that a scintilla of evidence implicated either of the original defendants with creating the hazard or with being responsible therefor. To hold to the contrary would be based on speculation and conjecture. We are unwilling under the evidence to charge the trial court with error in directing a verdict by the jury for said defendants. The action of the court was free of error.

■  Assignment of error 3 charges the trial court with error in directing the jury to return a verdict for defendant Oberle. This assignment not being argued is deemed waived. Supreme Court Rule 9, Appendix, Title 7, Recompiled Code of 1958.

We pretermit considering Oberle's motion to dismiss any purported appeal from the judgment rendered in its favor. Oberle contends that appellant did not give security for costs relative to the appeal from said judgment. Suffice it to say that the Power Company, which filed the complaint against Oberle, does not complain in the record about the directed verdict for Oberle; and neither does appellant in his brief. Under the circumstances, we will not review the judgment responsive thereto. This judgment is due to be affirmed.

The judgments of the trial court in favor of the original defendants and Oberle are affirmed.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

SIMPSON, COLEMAN, and McCALL, JJ., concur.

HEFLIN, C. J., and BLOODWORTH, J., concur in result.

