Plaintiff/Appellant E. Roy Chance sued Defendants/Appellees, Dallas County and two of its employees, Cecil Strickland and Tommy Craig, alleging personal injuries resulting from Defendants' negligence and/or wantonness.
Defendants answered Plaintiff's complaint, asserting: 1) Plaintiff was guilty of contributory negligence; 2) Plaintiff's injuries, if any, resulted from the negligence of his employer, Norman W. Copeland, as opposed to that of Defendants/Appellees; 3) Plaintiff assumed the risk of injury through his employment; and 4) Plaintiff's employer was an independent contractor who, through his repair contract with the County, assumed the risk of any injury inherent therein.
The trial court entered judgment upon a jury verdict in favor of Defendants. Plaintiff appeals from the denial of his motion for a new trial. We reverse and remand.
 FACTS
Chance's employer, Norman W. Copeland, a self-employed welder, was hired by Cecil Strickland, Dallas County Shop Foreman, to perform welding repairs on a diesel fuel tank owned by the County. The diesel tank was located inside a metal storage shed, which also contained a gasoline tank. Both storage tanks were located underground, approximately twenty to twenty-five feet apart.
Strickland informed Copeland that he (Strickland) would clean out the tank prior to Copeland's commencing his welding. Thereafter, Strickland personally cleaned the tank of debris by using approximately one gallon of gasoline as a cleaning solvent. Strickland did not notify Copeland, or anyone else, that the diesel tank had been cleaned with gasoline.
Subsequently, during a personal inspection of the diesel tank, Copeland smelled gasoline odors within the metal storage shed. According to Copeland, upon further inquiry, he was informed by Tommy Craig, the County's office clerk and parts manager, that there had never been any gasoline in the diesel tank, and that the gasoline odor came from the gasoline tank situated within the metal storage shed.
When Copeland and Chance arrived at the tank, Chance also detected gasoline fumes. Chance inquired of Copeland concerning the odor, and was told by Copeland of his conversations with Tommy Craig. In an effort to further check the diesel tank for the presence of gasoline, Copeland and Chance placed a dry mop inside the tank. They removed the mop and attempted, *Page 297 
unsuccessfully, to ignite it. At that point, the men commenced welding on the tank. The tank exploded, causing injuries to the Plaintiff.
 ISSUES
Appellant frames the two issues presented thusly: whether the trial court erred 1) "in charging the jury that an employee of an independent contractor performing dangerous work, however skillfully performed, assumes the risk occasioned by the performance of such work, and, therefore, may not recover for any resulting injuries, even if wantonly inflicted"; and 2) "in charging the jury that assumption of the risk is a valid defense to wanton conduct."
In support of his alleged error No. 1, Appellant directs our attention to the following portion of the trial judge's jury instructions:
 "Now to go back and explain to you what we mean by independent contractor and assumption of risk in connection with what is intrinsically dangerous. Now let me use an example that pops into my mind. I know . . . many of you probably saw that old movie many years ago about an oil well fire. These trouble shooters that went all over the world to put these fires out. Now they were specialists in their field. Now John Wayne, I think, was the hero of the movie. They would go out and be hired by an owner of an oil well to put out a fire where the well had caught on fire. It was the type of thing that an ordinary person couldn't do. Now they hired that man and he took his crew out there. He was an independent contractor. Everybody knew that that was a dangerous thing to do. So under ordinary circumstances, that is an intrinsically dangerous thing and there would be liability on the part of the owner of the oil well for any injuries sustained by someone.
 "However, when you've got someone who's an expert in that field and he knows that going out there to that fire is dangerous and he knows that he runs the risk of life and limb by attempting to put that fire out, and yet knowing of that danger, being fully aware of it, he goes forward and attempts to put the fire out and is injured, there is no liability in that case upon the owner of the property because knowing of the danger he assumed the risk."
Additionally, Appellant assigns as error the action of the trial judge in giving Defendants' Charge 37:
 "If you are reasonably satisfied from the evidence that the Plaintiff assumed the risk, then the Plaintiff cannot recover for any wantonness of the Defendant."
Plaintiff timely objected to both the "John Wayne" story and Charge # 37.
 CONTENTIONS OF THE PARTIES 1) The "John Wayne" Story Appellant: Notwithstanding the correctness of its initial ruling, permitting the factual issue of Plaintiff's knowledge of the dangerous condition to go to the jury, the trial judge's subsequent "John Wayne" instruction, says the Appellant, was the virtual equivalent of informing the jury that, as a matter of law, the Plaintiff assumed the risk of injury by undertaking the welding job. It is not the use of the "John Wayne" hypothetical, as such, that meets with Appellant's disapproval; rather, says the Appellant, the trial court's dramatization of such an extreme example of an admitted assumption of risk situation unfairly influenced the jury to equate the "John Wayne" story with the instant case, to the exclusion of the jury's factfinding prerogative with respect to the "hidden danger" principle.
Appellees: The trial judge clearly preserved to the jury its factfinding options, say the Appellees, pointing to portions of his jury instructions immediately following the "John Wayne" story:
 "Now you're getting back into what I was talking about in the three elements of assuming the risk. There must be a danger that he's aware of and he goes ahead and does it anyway. So either you've got to be aware of it or by the *Page 298 
exercise of reasonable diligence, should have been aware of it. That's what we're talking about here. . . . [Mr. Chance is saying] the county didn't warn [him] of the danger he was going into; they knew it was there and should have warned him. Now that's [his] contention.
 "[The defendants'] contention is that we, on the other hand, . . . told him to come out there and do this; and that's the contentions of the parties.
 "Now all I'm trying to do is tell you what the law is. I'm not telling you what you must believe and what you don't believe, that's up to you. I'm trying to frame it in laymen's language to where you will see what the contentions of the parties are and be able to intelligently act on the evidence as you find it."
 2) Assumption of the Risk as a Defense to Wantonness Appellant: After properly submitting the wanton count to the jury, contends the Appellant, the trial court erred in charging the jury that its finding that Plaintiff assumed the risk of injury (if it should so find) would preclude Plaintiff's right of recovery. Appellant directs our attention to the following language in Blount Brothers Construction Company v. Rose,274 Ala. 429, 437, 149 So.2d 821, 830 (1962):
 "Under our decisions, wantonness of the deceased Rose is not a defense to this complaint. Nor is assumption of risk, which is in the nature of wantonness, a good defense. Foreman v. Dorsey Trailers, 256 Ala. 253, 54 So.2d 499 [1951]."
Once a jury issue is established by the evidence on the theory of wanton conduct, says Appellant, the Blount Brothers
principle is equally applicable in the instant context of a premises owner/independent contractor.
Appellees:[1]
According to Appellees, because the situation in BlountBrothers, supra, as well as in other cases cited by Appellant, did not involve a "premises owner/independent contractor" dichotomy, any "general rule" regarding assumption of the risk, as no valid defense to wanton conduct, is incompatible with the facts now at issue.
Appellees bolster their support for an "exception" to the "general rule" in the "premises owner/independent contractor" situation with the following from 41 Am.Jur.2d IndependentContractors § 28 (1968):
 "As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees `assumed the risk.' As to contracts for such repair work, it is reasoned that the contract is sufficient in itself to impart notice of a defect, the extent of which the repairman must discover for himself. . . ."[2] *Page 299 
Appellees summarize their contentions thusly:
 "Mr. Copeland, the independent contractor in the case now under consideration, undertook to repair a defect in a fuel tank. That in and of itself was sufficient to put the independent contractor on notice of the possible dangerous condition from combustible fumes in the tank. This was clearly a working condition, part and parcel of the contract itself, and although dangerous, was nonetheless normal and ordinary under the circumstances. Accordingly, the independent contractor and his employee, the Plaintiff-Appellant herein, must be deemed to have assumed the risk."
 DECISION 1) The "John Wayne" Charge
We understand and appreciate Appellant's concern with respect to this "dramatization" in which the independent contractor (the oil well fire fighter) clearly assumed the risk of injury to himself and his employees, particularly where the hypothetical contained no hint of "hidden dangers" known to the landowner, but unknown to the invitee contractor. If the trial court had concluded its charge with the telling of this story, we would not hesitate to accept this allegation of error; but it is clear from the record that the follow-up instructions were specifically designed to dispel any undue restrictions on the jury's factfinding prerogatives regarding the respective "hidden danger" contentions of the parties. We hold that, when the charge is considered as a whole, this challenged portion of the charge does not constitute reversible error. Alabama PowerCo. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975).
Moreover, we are reluctant to be hypercritical of the trial court's use of commonplace examples in explaining abstract legal principles. Well chosen hypotheticals can become the meat and blood that enflesh the bare bones of legal abstractions, giving life, and thus practical application, to the whole body of the trial court's instructions to the jury. To be sure, when the trial court uses such examples, care must be taken not to cross the forbidden line that separates legal instructions from comments on the evidence. In the instant case, the trial judge trod near that line of separation by giving a classical assumption-of-the-risk-of-injury example, but avoided its encroachment by carefully preserving the jury's factfinding prerogatives. After all, reversible error does not find its source in mere imperfection, for litigants are not entitled to a perfect trial, only a fair one.
 2) Assumption of the Risk as a Defense to Wanton Conduct
If Appellees are correct in their assertions that the "premises owner/independent contractor" standard of care is different from the rule set forth in Blount Brothers (i.e., that assumption of the risk is no valid defense to wanton conduct), the judgment in this case is due to be affirmed.
In the purest sense (and the Appellees recognize this), the "exception" alluded to in 41 Am.Jur.2d is not an exception to the rule that assumption of the risk is not a defense to wantonness; rather, it is an exception to the general rule "governing the extent of [the owner's] duty to furnish an independent contractor and the latter's employees a safe place to work and to warn them of hidden dangers."
While we do not quarrel with the statement in Am.Jur. of the general rule and the "contract for repairs" exception, we find our own case law adequate for the disposition of the issue at hand. The applicable *Page 300 
rule is stated in Veal v. Phillips, 285 Ala. 655, 235 So.2d 799
(1970):
 "[A]n owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this, of course, he is liable for resultant injury. Crawford Johnson Co. v. Duffner, 279 Ala. 678, 189 So.2d 474. . . ." 285 Ala. at 657-58, 235 So.2d at 802.
See, also, Armstrong v. Aetna Ins. Co., 448 So.2d 353 (Ala. 1983); Hughes v. Hughes, 367 So.2d 1384 (Ala. 1979); andChrysler Corporation v. Wells, 358 So.2d 426 (Ala. 1978).
Unquestionably, the trial court, in its denial of Defendants' motion for directed verdict, properly perceived the law of the case with respect to its appropriate function in determining the legal issue of duty and left to the jury the resolution of conflicting inferences of fact. Accordingly, the trial court, and correctly so, decided the duty issue favorably to the plaintiff, subject, of course, to the jury's resolution of certain factual issues. In other words, in submitting the case to the jury, the trial court properly ruled that, in the event the jury found from the evidence that the Defendants created or knew of the hazardous condition (i.e., the recent use of gasoline in cleaning the tank), and the Plaintiff neither knew, nor should have known, of the specific danger resulting in his subsequent injury, then the Defendants could be held liable to the Plaintiff.
The ultimate question, then, is whether the trial court, having properly perceived and applied the law with respect to the duty of a premises owner to an independent contractor and its employees, committed reversible error in charging the jury that assumption of the risk is a legal defense to wantonness? We reaffirm Blount Brothers, supra, and affirm its application to the instant case; therefore, the judgment is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
MADDOX, J., dissents.
[1] We note, as a matter of interest, that Appellees do not contend that the jury's verdict favorable to them on the simple negligence claim, as a matter of law, absolves them from liability on the wanton conduct claim; and this for valid reason, because there is no such rule of absolution under our cases, where the evidence supports the wanton conduct claim. Wantonness is not a mere higher degree of culpability than negligence. See Graves v. Wildsmith, 278 Ala. 228,177 So.2d 448 (1965). Moreover, such a rule, if recognized, could have no application in the context on a contributory negligence defense.
[2] The following is the remainder of Section 28, omitted from Appellees' brief:
 "On the other hand, where a risk separate and distinct from those created by the defects to be repaired under the contract resulted in the injury or death of a contractor or the latter's employee, it has been held that a contractee cannot successfully invoke the defense of assumption of risk, and that the general rules governing the extent of his duty to furnish an independent contractor and the latter's employees a safe place of work and to warn them of hidden dangers are applicable."