TORBERT, Chief Justice
(concurring specially).
I agree that summary judgment was inappropriate. I write only to point out what I perceive to be the disputed factual issues which preclude summary judgment.
The facts reveal that Mr. Love was an independent contractor. He was a tree cutter by occupation. He was hired to cut and remove some damaged trees. Mr. Love provided his own tools and hired his own help. While Ms. McBride’s affidavit states that Mr. Love was working under Mrs. Carleton’s supervision, which might indicate that Mr. Love was an employee rather than an independent contractor, her subsequent deposition reveals that she had no basis for reaching that conclusion:
“Q. Were you present when Mr. Love had any discussions at all with Mrs. Carleton?
“A. No.
“Q. Have you ever talked to Mrs. Carleton?
“A. No.
“Q. Has anybody ever related to you anything Mrs. Carleton may have said about her arrangements with Mr. Love?
“A. No.
“Q. Has anybody ever related to you any statements Mrs. Carleton may have made regarding this accident in any respect?
“A. Regarding it, what do you mean?
*1011 Q. I’m phrasing my question broadly-
“Has anybody ever told you anything Mrs. Carleton may have said about how the accident happened or what arrangement she had with Mr. Love or anything that would pertain in any way to the accident?
“A. No. She — no.

“Q. Do you know if Mrs. Carleton was to oversee or supervise him in any way?
“A. No, I don’t.
“Q. Do you have any knowledge, be it direct or indirect, that Mrs. Carleton did attempt to supervise him in any way?
“A. No.
“Q. Do you have any knowledge that Mrs. Carleton gave your father any specific instructions as to how to cut the trees?
“A. No, I don’t, but I feel like that she, you know, should give him the right, the okay to do it because she would call him.
“Q. As far as you know she hired him to cut the trees, right?
“A. Right.
“Q. My question to you is, did she give him instructions as to how she wanted the trees cut? That is to saw here and chop there or anything specific like that?
“A. Only what I was told.
“Q. What were you told, please?
“A. I was told that she told him what trees that she wanted cut down.
“Q. Do you have any knowledge or were you told that she gave any more specific instructions than which trees to cut?
“A. No.

“Q. As far as you know, the only supervision and instruction that Ms. Carleton gave your father was to tell him which trees she wanted cut?
“A. As far as I know.”
The deposition testimony of Henry Calhoun, Mr. Love’s employee and the only witness to the accident, supports the conclusion that Mrs. Carleton did not control the manner in which Mr. Love cut the trees.
“Q. Did Mr. Love ever say anything to you about what was said between [him] and Ms. Carleton?
“A. He said she wanted him to cut that tree and another one.
“Q. Did he say anything about how he was supposed to do it? Did she give him any instructions about how to do it?
“A. No.
“Q. Did she have anybody out there watching y’all?
“A. I didn’t see nobody.
“Q. Was anybody supervising you whatsoever?
“A. No.”
The issue then is whether Mrs. Carleton, as a premises owner, breached any duty owed to Mr. Love, an independent contractor. There is an exception to the general rule concerning the duty a premises owner owes an independent contractor:
“As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe place of work to an independent contractor and the latter’s employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees ‘assumed the risk.’ ”
41 Am.Jur.2d Independent Contractors § 28 (1968).
In Veal v. Phillips, 285 Ala. 655, 235 So.2d 799 (1970), we said:
“[A]n owner of premises is not responsible to an independent contractor for *1012 injury from defects or dangers which the contractor knows of, or ought to know of. If the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this, of course, he is liable for resultant injury. Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474 ....” 285 Ala. at 657-58, 235 So.2d at 802.
See also, Chance v. Dallas County, 456 So.2d 295 (Ala.1984).
The affidavits and depositions of the parties and the witness, while strongly implying that Mr. Love knew or should have known of the danger or defect, fail to completely resolve this genuine issue as to a material fact. Therefore, summary judgment is not appropriate.