177 So.2d 448

Danny GRAVES, pro aml

v.

Lula M. WILDSMITH.

Marvin GRAVES

v.

Lula M. WILDSMITH.

6 Div. 91, 91–A.

Supreme Court of Alabama.

April 8, 1965.

Rehearing Denied Aug. 12, 1965.

Marvin Cherner and Louis Fleisher, Birmingham, for appellants.

**230**

Henry E. Simpson, Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

LAWSON, Justice.

Danny Graves, a minor, by his next friend and father, Marvin Graves, brought suit against Mrs. Lula M. Wildsmith to recover damages for personal injuries. There were two counts, one for negligence and the other based on wanton misconduct.

Marvin Graves, the father, brought suit against the same defendant seeking to recover for expenses incurred in the treatment of his son's injuries and for loss of his son's society and services. The complaint contained one count based on negligence and one count charging wanton misconduct.

The defendant pleaded the general issue in short by consent in the usual form in each case.

The two cases were consolidated and tried together in the Circuit Court of Jefferson County under the statute which authorizes circuit courts in counties of 500,000 or more population to consolidate pending causes of like nature. § 221, Title 7, Code 1940, as amended by Act 230, approved September 15, 1961, Acts of Alabama 1961, Sp.Sess., Vol. II, p. 2241.

Trial of the two cases resulted in separate verdicts for the defendant. Motion for new trial was filed by each of the plaintiffs. Those motions were denied.

The plaintiffs have taken separate appeals to this court but the appeals were submitted here on one transcript.

The trial court refused in each case to give at the defendant's request affirmative instructions to find for the defendant on the wanton counts. And in the oral charge the trial court specifically instructed the jury as to the theory of liability included in the wanton counts.

Yet, at the request of the defendant the trial court gave a written instruction in each case in the following language:

> "The court charges you that if you are reasonably satisfied from the evidence that Lula M. Wildsmith was free of negligence as charged against her in the complaint, then and in such event your verdict should be in favor of the defendant."

It is error to give such a charge where there is a wanton count supported by the evidence. Sims v. Birmingham Electric Co., 238 Ala. 83, 189 So. 547, and cases cited; Buchanan v. Vaughn, 260 Ala. 482, 71 So.2d 56.

The appellee, defendant below, argues that the giving of those charges was error without injury for the reason that there was no evidence to support the wanton count, citing Tyler v. Drennen, 255 Ala. 377, 51 So.2d 516.

In considering the question as to whether there was evidence from which the jury could find for the plaintiffs on the wanton counts, we must consider the evidence most favorable to the plaintiffs. Buchanan v. Vaughn, supra, and cases cited.

Stating the evidence in its most favorable aspect for the plaintiffs, it is: Plaintiff Danny Graves, a minor of the age of fifteen years, was driving a motorbike which belonged to the mother of his friend, Randy Parker, between 4:30 and 4:50 o'clock on the afternoon of December 3, 1960. He was proceeding at a speed of between twenty-five and thirty miles an hour in a southerly direction on Arkadelphia Road, a part of Highway 78 West, a thirty-foot-wide paved street, when he first saw the automobile being driven by the defendant, Mrs. Wildsmith, proceeding southwardly ahead of him on Arkadelphia Road. Randy Parker was riding behind Danny on the "buddy" seat of the motorbike. Mrs. Wildsmith had entered Arkadelphia Road from Ninth Avenue. She came from the east and turned left on Arkadelphia Road and proceeding in a southerly direction at a speed of between twenty and twenty-five miles an hour. When she entered Arkadelphia Road, Mrs. Wildsmith did not see the motorbike as it was moving southward up a hill to her right. As she proceeded southwardly on Arkadelphia Road, Mrs. Wildsmith was not conscious of the fact that the motorbike was following her. Both vehicles were moving in the west lane of the two-lane street, that is, in the lane designated for southbound traffic. As the two vehicles moved down a hill the motorbike was from twenty to twenty-five feet behind the automobile. The motorbike was nearer the west curb than the automobile. As Mrs. Wildsmith approached the inter-section of Arkadelphia Road and 8th Terrace, West, she veered her automobile several feet to the left near the center line and then turned to the right to enter 8th Terrace, West. Before making the turn she gave no hand signal or other indication that she was going to turn. She did not look in her rearview mirror. When Mrs. Wildsmith veered her automobile to the left the brake lights on her automobile came on. When Danny Graves saw the brake lights come on, he put a little pressure on the brakes of the motorbike, but when he saw the automobile turn to the right he put the brakes on with full force. At that time the motorbike was ten or fifteen feet behind the automobile and was moving in a straight line at a speed of about twenty-five miles an hour at a distance of approximately seven feet from the west curb of the road. When Danny Graves applied full pressure to the brakes on the motorbike the rear wheel or wheels caught or "locked," the tires began to slide, the motorbike fell to the pavement and skidded into the right side of the defendant's automobile. Both boys received serious and painful injuries.

The evidence summarized above clearly shows a violation of §§ 16 and 17, Title 36, Code 1940, as amended, and therefore was sufficient to take the case to the jury on the first count of the complaints, charging negligence.

But is it sufficient to make out a case for jury determination under the wanton counts?

Wantonness has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. Duke v. Gaines, 224 Ala. 519, 140 So. 600; First National

Bank of Dothan v. Sanders, 227 Ala. 313, 149 So. 848; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277.

Since Mrs. Wildsmith did not know that the motorbike was behind her, we do not think the evidence would support a finding that she veered her automobile to the left and then turned it to the right without giving the proper signals, conscious of the fact that in so acting injury would likely or probably result to the plaintiff. This conclusion is, of course, based on our statement that Mrs. Wildsmith was never conscious of the fact that the motorbike was trailing her automobile. We have not overlooked the argument of counsel for plaintiffs that despite Mrs. Wildsmith's testimony that she did not know the motorbike was on the road, the jury could have found that she was aware of that fact because when she entered Arkadelphia Road from Ninth Avenue the motorbike "was approximately 30 or 40 feet away." There is no evidence to support the statement that the motorbike was approximately thirty or forty feet away from appellee when she entered Arkadelphia Road. Danny Graves testified that he did not see Mrs. Wildsmith's automobile until after it was on Arkadelphia Road and after the motorbike had come over the crest of a hill. Randy Parker did say that he saw the automobile when it entered Arkadelphia Road, but he did not say how far he was from the intersection of Arkadelphia Road and Ninth Avenue when he first saw the automobile. He did say that he was "half way up this hill" when he first saw the automobile. But the length of the hill is not shown. From aught appearing in this record, it may have been impossible for Mrs. Wildsmith to have seen the motorbike as it proceeded up the hill from her position in the automobile.

Counsel for plaintiffs next assert that it was not necessary for Mrs. Wildsmith to have had actual knowledge of the presence of the motorbike in order to make out a case of wanton conduct.

We have said that wantonness may be predicated upon conduct occurring before a discovery of the peril of another, as well as afterwards. Ashley v. McMurray, 222 Ala. 32, 130 So. 401. We have also said that it is wantonness when one has knowledge that another (any person) is likely to be in a position of danger and with conscious disregard of such known danger proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Buchanan v. Vaughn, supra, and cases cited.

But where is the evidence to support a finding that Mrs. Wildsmith had knowledge that someone was likely to be put in danger by the manner in which she made the turn into 8th Terrace, West, at the time she made it? We do not think it is the law that under all circumstances and conditions a motorist on all highways, roads and streets who does not turn in compliance with the provisions of §§ 16 and 17, Title 36, supra, is guilty of wantonness. In Buffalo Rock Co. v. Davis, 228 Ala. 603, 606, 154 So. 556, 558, we said:

"But there can be no wanton injury without a knowledge of conditions which make the act causing it likely to result in injury and a consciousness of the danger. It does not result from mere negligence in the failure to have that knowledge and consciousness. * * *"

There is no evidence in the record to support the italicized portion of the hereafter quoted statement, and other similar observations, in plaintiff's briefs: "* * * the accident occurred on Arkadelphia Road, which is also known as Highway *U. S.* 78 West, *and is a heavily travelled main artery leading from Birmingham, Alabama, westwardly toward Memphis, Tennessee.*" No witness testified that Arkadelphia Road "is a heavily travelled main artery." There is a complete lack of evidence as to the traffic conditions on Arkadelphia Road at the point where and the time when the accident occurred, or at any other time. The map or drawing used at the trial shows that at the

point where the accident occurred Arkadelphia Road runs in a northerly-southerly direction, not east and west, and Birmingham and Memphis are not mentioned as the terminal points. We make this observation solely for the sake of accuracy. There is no evidence going to show that Mrs. Wildsmith knew that Arkadelphia Road is a frequently travelled road at the time of day the accident occurred, if such be the case. As far as this record discloses, the only traffic on the road at the time of the accident were the two vehicles involved.

Since there was a complete absence of evidence showing or tending to show the frequency of the use of the road at the point of collision and at the hour of the day that it occurred, as well as an absence of evidence tending to show that Mrs. Wildsmith had knowledge that conditions existed which would make her conduct dangerous and likely to result in injury, the trial court should not have submitted the wanton counts to the jury. Buffalo Rock Co. v. Davis, supra; Griffith Freight Lines v. Benson, 234 Ala. 613, 176 So. 370; Holman v. Brady, 241 Ala. 487, 3 So.2d 30. See Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277. Hence, error to reverse is not made to appear in the action of the trial court in giving the charges which ignored the wanton counts and which in effect instructed the jury to find for the defendant if she was not negligent. Tyler v. Drennen, supra.

The case of McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832, relied upon by plaintiffs, is clearly distinguishable, in that the defendant automobile driver in that case knew that the motorcycle was behind her.

The plaintiffs next insist that the trial court erred in overruling their motion for mistrial. On recross examination of the plaintiff Danny Graves, he was asked by counsel for defendant, "Has your driver's license been suspended?" Plaintiffs' objection to the question was sustained. Counsel for plaintiffs then asked permission of the court to withdraw his objection. Permission was granted and the witness answered, "Yes, sir, they were revoked." On redirect it was brought out that the witness' driver's license had been revoked after the accident involved in this case. On further recross, counsel for defendant propounded the following question to the witness: "As a matter of fact, it was revoked as a result of your dragging by Jones Valley High School, is that correct?" Objection interposed to the question by counsel for plaintiffs was sustained and the question was not answered. A discussion then ensued out of the presence of the jury, following which the plaintiffs moved for a mistrial, which was overruled. Plaintiffs cite no authorities in support of their assertion that they were entitled to a mistrial because of the question pertaining to drag racing to which objection was sustained. We are not willing to say that the mere asking of the question was so prejudicial to the rights of the plaintiffs as to require a mistrial. If the plaintiffs entertained the view that the action of the trial court in sustaining the objection was not sufficient protection, they could have requested the trial court to admonish the jury that they could not assume an affirmative answer to the question and for them not to be influenced by the question. No such request was made.

The plaintiff, appellant, Danny Graves, contends that the trial court erred in giving Charges 10 and 11 at the request of the defendant. These charges both relate to the measure of damages. Since there was a verdict for the defendant, the giving of those charges, if error, was harmless. Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306, and cases cited.

The officer who investigated the accident and who talked to Danny Graves, testified that the latter told him that he had looked at the speedometer on the motorbike as he was proceeding down the hill and that it showed a speed of forty miles an hour. Danny did not deny making

**234**

this statement but plaintiffs sought to show that the speedometer was inaccurate, as shown by a comparison of its readings with readings from an automobile speedometer during tests conducted with friends of Danny Graves. The trial court refused to permit this proof on the ground that it was not shown that the speedometers on the automobiles used in the tests were accurate. We are of the opinion that it was not error to refuse to permit the plaintiffs to show the inaccuracy of the speedometer on the motorbike by merely showing the result of tests conducted by young boys, without some showing of their ability to properly conduct the tests and that the speedometer on the automobile used in the test was accurate. We do not think the cases cited by plaintiffs lead to a contrary result. Moreover, after an examination of the entire cause we cannot say that the ruling or rulings here complained of "has probably injuriously affected substantial rights of the parties." Supreme Court Rule 45.

The judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.