BEATTY, Justice.
Appeal by plaintiffs from the denial of their motion for a new trial following a verdict and judgment for the defendant in plaintiffs’ action based upon negligence and wanton conduct. We affirm.
The action arose out of a motor vehicle accident that occurred on Interstate 65 north of Montgomery. Olis Ralph Kinard and his wife, Valarie, who was driving, were travelling in the northbound lane, while Jack Carter was driving in the southbound lane at approximately 55 m.p.h. Carter saw what appeared to be a “recap” on the highway about 60 to 100 feet directly in front of his automobile. His car struck the object and blew a tire. The automobile travelled off the shoulder of the road, across the median, and into the northbound lane, where it struck the Kinard vehicle.
*1250 The plaintiffs sued the defendant, alleging negligence and wantonness, and claimed damages for personal injury, property damage, and loss of consortium. The defendant pleaded contributory negligence and unavoidable accident. The plaintiffs withdrew the wantonness and loss of consortium claims, and the case was tried to a jury only upon the negligence claim.
On their motion for a new trial, plaintiffs contended that the trial court erred in giving three jury charges requested by defendant, and they also maintained that two instances of jury misconduct necessitated a new trial. Their motion for a new trial was denied, hence this appeal.
I.
Did the trial court err in instructing the jury on the imputation of any negligence of Valarie Kinard to Olis Ralph Ki-nard?
It should be recalled that Yalarie Kinard was driving the Kinard vehicle and that Olis Kinard was a passenger in it. The Kinards were en route to Birmingham to see their granddaughter, and the timing of the trip was dictated by Mr. Kinard’s recent surgery. According to Mrs. Kinard, she was driving because of her husband’s recent surgery. In Count Three of the complaint, plaintiff Olis Ralph Kinard claimed damages for the damage to the vehicle. In his testimony, he referred to this vehicle as “my station wagon” and as “our automobile.” Mrs. Kinard herself testified that upon her husband’s warning of the other vehicle, she slowed down the vehicle she was driving.
In Downes v. Norrell, 261 Ala. 430, 434, 74 So.2d 593 (1954), this Court commented upon the factual situation justifying the imputation of negligence:
“The evidence stated may not show the technical relation of master and servant or principal and agent, but even when such relation is not shown, there is sometimes imputed to one the negligence of the driver of an automobile so as to hold the former liable for the damage to a third person caused by such negligence. That principle has the following qualities, as stated in Woodson v. Hare, 244 Ala. 301, 13 So.2d 172: the person charged must be (1) an occupant of the car; (2) must be the owner or a bailee of it; (3) must have the right to control its operation by the driver; and (4) the car must at the time be operated for his benefit, or the mutual benefit of them both. Right to control the operation of the car by the one sought to be charged is essen-tial_ That means that there is a community of interest in the object or purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other, whether or not use is being made of that right.... To be so, ‘ “there must be such a community of interest as to make each the agent of the other and the trip itself must be an integral part of the ventur.” ’ ” (Emphasis in Downes.) (Citations omitted.)
From the facts, it is clear that at the time of the accident, Mr. Kinard met the test of Downes v. Norrell, supra. Indeed, there was evidence that (1) he was an occupant of the car; (2) he was the owner; (3) he had the right to control its operation because of their joint enterprise and community of interest in making the trip; and (4) the car was being operated for their mutual benefit. Thus, it was not error for the trial court to so instruct the jury.
II.
Did the trial court err in instructing the jury on the doctrine of sudden emergency?
A trial court’s statement of the principle of “sudden emergency” was quoted with approval in Williams v. Worthington, 386 So.2d 408, 409 (Ala.1980):
“[I]f a person, a motorist, without fault of his own is faced with a sudden emergency, he is not to be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation. And the fact — if it be a fact — that he does not choose the best or safest way of escaping peril or preventing injury, it’s not necessarily negligence. But, the standard of care *1251 required in an emergency situation is that care which a reasonable and prudent motorist would have exercised under the same or similar circumstances.”
That statement of the principle is almost identical to the charge given by the trial court here. The facts in this case justified the charge. The defendant, Carter, testified that he saw a “gadget ... like a recap” lying in the road and that he was “so close on it” that there was no way he could dodge the object. He determined to go straight over the object, because, he said, attempting to go around it would have “killed all my family and myself, too.” After his car hit the object, he did not have brakes or power steering and had no control over the car. His car had new tires but, after the accident, two of these were found to have been severely damaged. Even though there was evidence that the weather was clear and that the roadway view was clear, nevertheless, taking the evidence as a whole, a jury question was presented as to whether a sudden emergency existed and, if so, whether under the circumstances the defendant met the standard of prudence required. Williams, supra.
III.
Did the trial court err by instructing the jury on the principle of mechanical defect or failure?
The trial court charged:
“It’s the duty of the owner or the operator of the motor vehicle to see that it’s reasonably safe—the vehicle—before operating it on a public highway. And where, however, the owner or operator of the vehicle, without knowledge of a defective condition, known or reasonably aforeseeable [sic], experiences a mechanical failure, and such mechanical failure is the sole proximate cause of the injury, or damage, the owner or operator cannot be held liable.”
The evidence is without dispute that defendant’s car was equipped with four new tires, that at least one of these tires “blew out” or failed when the object was struck, and that defendant’s car left the highway immediately thereafter and struck plaintiffs' vehicle. Thus, the defendant experienced a mechanical failure. It was for the jury to decide whether that mechanical failure, or some negligence of the defendant, was the proximate cause of plaintiffs’ injuries. Howell v. Birmingham Nehi Bottling Co., 267 Ala. 290, 101 So.2d 297 (1958).
IY.
Did the trial court err in refusing to declare a mistrial, and in denying plaintiffs’ motion for new trial, because of two instances of jury irregularities?
One of the instances arose after the defendant had completed his testimony. A juror spoke to the trial court:
“JUROR: Judge Phelps.
“THE COURT: Yes, sir.
“JUROR: I don’t know whether I need to bring it up now, or not; I was not aware that I knew Mr. Carter when he stated that he worked for Sears. I worked for Sears at the same—during the time that he did. That’s been twenty-five years ago, I guess, since I’ve seen him.
“THE COURT: All right. Would that make any difference at all, directly or indirectly, even in the slightest degree—
“JUROR: Not with me; no, sir.
“THE COURT: —in your being able to render a verdict that’s fair and just and impartial. And you didn’t recognize him until he started talking?
“JUROR: I didn’t know it until he mentioned he worked for Sears, and then I remembered his face.”
The trial court denied plaintiffs’ motion for a mistrial, and under the particular circumstances his ruling was not error. For one thing, the trial court found that the juror had not earlier answered anything wrongfully, but came forward when he recognized the defendant later in the trial. But even if the juror had answered incorrectly on voir dire, and belatedly recognized the defendant at this later stage of the trial, those circumstances would not have automatically entitled plaintiffs to a *1252 new trial. In Martin v. Mansell, 357 So.2d 964, 967 (Ala.1978), this Court, quoting Freeman v. Hall, 286 Ala. 161, 166-67, 238 So.2d 330, 335-36 (1970), reiterated the standard of review in such instances:
“ ‘Neither Sanders v. Scarvey, [284 Ala. 215, 224 So.2d 247 (1969) ], Leach [v. State, 31 Ala.App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944)], nor the original opinion in the instant case, is authority for the proposition that on voir dire any failure of any prospective juror to respond properly to any question regardless of the excuse or circumstances automatically entitles a party to a new trial or reversal of the cause on appeal. [Emphasis in Freeman.']
“ ‘We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the mov-ant. ...
[[Image here]]
“ ‘Although the factors upon which the trial court’s determination of prejudice is made must necessarily vary from case to case some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.
“ ‘We are mindful of the heavy responsibility placed on the trial court to maintain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors.
“ ‘To re-emphasize, we say that we will review the trial court’s ruling on motion for new trial predicated on jurors’ improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice.’ ”
In connection with the other alleged instance, plaintiff’s motion for a new trial contained the allegation that the defendant’s wife, who later testified as a defense witness, had been seen earlier during a recess talking with one of the jurors. The record is silent with respect to the content or tenor of that conversation; hence, there is nothing disclosed on which either we or the trial court could determine whether any prejudice resulted therefrom.
A fortiori, we cannot find abuse in these instances where the trial judge who heard the voir dire, observed the jurors’ expressions later, and reconsidered the issue on motion for a new trial, exercised the discretion vested in him.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.