**John SALTER and Betty Salter, Plaintiffs–Appellees,**

**v.**

**Billy M. WESTRA and North American Van Lines, Inc., Defendants–Appellants.**

**No. 89–7403.**

United States Court of Appeals, Eleventh Circuit.

July 9, 1990.

Patrick W. Richardson, Denise A. Ferguson, Bell, Richardson & Sparkman, Huntsville, Ala., for defendants-appellants.

David H. Meginniss, Hornsby, Watson & Meginniss, Huntsville, Ala., for plaintiff-appellees.

Before COX, Circuit Judge, HILL* and SMITH**, Senior Circuit Judges.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

HILL, Senior Circuit Judge:

## I. INTRODUCTION

This appeal concerns a tort action based upon alleged negligence and wantonness resulting in injuries to John Salter, appellee. A tire became detached from a moving tractor-truck and hit Salter as he was working at a construction site on an interstate highway. The jury returned a verdict in favor of Salter on both claims. The defendants appeal several rulings by the trial court.

### A. *Issues Presented*

Appellants Billy Westra and North American Van Lines, Inc. ("North American") raise three distinct categories of issues on appeal. First, appellants claim that the trial court erroneously failed to instruct the jury as to the "mechanical defect or failure" doctrine as it applied to the negligence claim. Second, that the trial court incorrectly overruled objections to certain leading questions and questions regarding Mr. and Mrs. Salters' financial status and the psychological trauma experienced by the couple's two young sons as a result of the injuries to Mr. Salter. Finally, appellants argue that the trial court

erred in submitting the wantonness claim to the jury.

 We hold that the trial court did not err in refusing to give the jury appellants' requested "mechanical defect or failure" instruction; nor is there cause for reversal in the trial court's handling of certain questions and testimony at trial.[1] The trial court did err, however, when it refused to direct a verdict in favor of the appellants on the wantonness claim.

### B. *Facts and Procedural History*

On May 6, 1986, Appellant Billy Westra, a truck driver with 23 years of over-the-road driving experience, began an early morning trip after he conducted a mandatory pre-trip visual inspection of his 1973 tractor-truck, which was leased to Appellant North American. Westra was on the road approximately one hour when he approached a construction site on an interstate highway in Alabama. Westra testified that he neither saw nor felt anything to indicate a mechanical problem with his truck before the cab suddenly lurched downward when the left two wheels of the front drive axle separated from the vehicle.[2] The wheels remained upright and

1. Appellants argue that the trial court committed reversible error in overruling their objections to a number of leading questions asked of Mr. Salter at trial. The standard of review for such a claim of error is for an abuse of discretion. *United States v. Auten,* 570 F.2d 1284 (5th Cir.), *cert. denied,* 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); *United States v. Johnson,* 495 F.2d 1097 (5th Cir.1974). We have carefully reviewed the exceptions taken by appellants and find that the trial court did not abuse its discretion.

Second, appellants claim that the trial court erred by overruling their objection to a question asked of Mr. Salter by his counsel as to whether he (Mr. Salter) could afford to pay the $21,000 in medical bills that he had incurred as a result of his injuries. We need not decide whether the testimony elicited from this question was in fact relevant to an issue at trial or whether, if not, any error was invited by appellants through their own questioning of Mr. Salter on this topic. Even assuming *arguendo* that the trial court erred in admitting such testimony, the error was harmless. In tandem with earlier testimony, the import of the statements evoked by the disputed question was that Mr. Salter did not have the financial resources to pay the $21,-

000 in medical bills, but that the workmen's compensation insurance carrier paid those bills anyway. Such information would not be sufficiently prejudicial to require reversal.

Finally, appellants complain that the trial court erred in overruling an objection to a question asked of Betty Salter concerning the initial reaction of her sons to the injury of their father. Appellants claim that this question was not material to any issue at trial and only served the purpose of evoking sympathy from the jury. Appellee maintains, on the other hand, that the question was relevant to Betty Salter's claim since it pertained to loss of services in the care, education, and rearing of the children. We find that even if the question elicited was not strictly relevant to John Salter's ability to care for the children, the testimony was (1) completely harmless as to the loss of consortium claim since the jury found against Mrs. Salter, and (2) not so prejudicial to the negligence claim that it mandates reversal.

2. Westra testified that he (1) noticed no unusual vibration in the wheels, which would probably have occurred if the lug nuts had been loose, (2) did not observe any wobbling of the tires or have any other visual indication of a problem,

gained momentum after detaching, one wheel sped in front of the truck and continued to the right side of the road without incident; the other wheel veered left, rolled up an embankment where John Salter and others were working at an overpass construction project, bounced off a concrete abutment, and knocked Salter and one other person to the ground.

Salter was treated at a nearby hospital and released later that day to be taken to his home in Mississippi. With the exception of certain objections made by the defendants to a number of questions regarding the extent of his permanent injury, see footnote 1 *supra,* Salter's injuries and the measure of his compensatory damages are not subject to this appeal.

Mr. Salter filed a complaint based upon negligence and wantonness against Westra and North American.[3] Mr. Salter's wife, Betty Salter, asserted a claim for loss of consortium. The jury returned a verdict against the defendants on the negligence claim and assessed compensatory damages in the amount of $250,000. The jury also found against the defendants on the wantonness claim and assessed $789,000 in punitive damages. The jury found against Betty Salter on her loss of consortium claim.[4]

The evidence at trial established that all ten lug bolts which fastened the wheels to the truck sheared off at the point where the smooth neck and threading met on each bolt. A mechanic who repaired the tractor-truck and two expert witnesses testified regarding possible causes of the accident.[5] All three witnesses testified that prior to the accident they had never encountered nor even heard of a situation in which all the lugs that fasten a wheel to its hub had sheared off at once.[6]

A number of different theories were presented to the jury of the possible causes for the accident. They included (1) over-torquing of the lug nuts, (2) and/or metal fatigue in the lug bolts, (3) driving with loose lug nuts, or (4) excessive corrosion of the lug bolts.

Since the wheels were retrieved and repaired shortly after the accident, much of the physical evidence was not preserved. The opinions offered at trial relied heavily upon the mechanic's description of the physical state of the wheels and the tire hub before he repaired them. According to the mechanic, the portions of the lug bolts still remaining within the wheel hub were corroded, and the outer portion of the detached wheels exhibited rust streaks.

Salter's expert expressed his opinion that the wheels came off due to poor maintenance and inspection. Under this theory, Westra either (1) operated his truck with loose lug nuts, which eventually caused the lug bolts to weaken and shear; or (2) simply neglected maintenance of the wheels to the point that the lug bolts sheared as a result of rust and corrosion, regardless of whether the lug nuts were loose.

The defendants' experts testified that the exact cause of the accident could not be determined with any degree of certainty and that over-torquing and latent metal fatigue were possible causes.

Westra testified that although he was uncertain as to the last date on which the wheels had been removed prior to the accident, he was sure that a "wheel and nut check" was performed on the truck as part of a semi-annual comprehensive inspection required by the Interstate Commerce Com-

---

and (3) did not recall hitting a pothole or any object in the road immediately prior to the detachment of the wheels.

**3.** Federal jurisdiction was premised on diversity of citizenship.

**4.** Since Betty Salter did not appeal the jury's verdict on the "loss of consortium" claim, we refer to "appellee" in the singular throughout this opinion even though Betty Salter is listed as an appellee in the caption of this appeal.

**5.** John Pinkeston, the mechanic who repaired the wheel hub and reattached the wheels after the accident, testified in a deposition that was introduced into evidence at trial.

**6.** Salter's expert testified that he did, however, learn of two such occurrences of multiple lug shearing when he specifically investigated the possible causes of this accident in preparation for his testimony at trial.

mission. As mentioned above, Westra testified that he also made a visual inspection of the entire tractor-trailer unit approximately one hour prior to the accident.

## II. DISCUSSION

### A. The "Mechanical Defect or Failure" Defense

■ Under *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we look to Alabama law to determine whether the trial court erred in refusing appellants' proffered instruction on its "mechanical failure or defect" defense.

■ The most common expressions of the "sudden emergency" and "mechanical defect or failure" doctrines do not apply to the facts of this case. Although these doctrines differ according to the nature of the unusual occurrence alleged to have affected a driver's ability, under most circumstances they both refer to a standard of care applicable to allegedly negligent *conduct* in the operation of a motor vehicle *in the face of unexpected circumstances.* As explained below, in many instances the "mechanical defect or failure" doctrine is a sub-species of the "sudden emergency" doctrine. That is, a "mechanical defect or failure" can generate the "sudden emergency" circumstances under which the driver's conduct is evaluated. This common application of the these doctrines does not relate to claims of negligence premised solely on the maintenance and care of a vehicle.

The Alabama Supreme Court recently restated the doctrine of "sudden emergency" as it applies to allegedly negligent *conduct* in the face of sudden circumstances that a reasonable driver could not foresee.

"[I]f a person, a motorist, without fault of his own is faced with a sudden emergency, he is not held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation. And the fact—if it be a fact—that he does not choose the best or safest way of escaping peril or preventing injury, it's [sic] not necessarily negligence. But, the standard of care required in an emergency situation is that care which a reasonable and prudent motorist would have exercised under the same or similar circumstances."

*Kinard v. Carter,* 518 So.2d 1248, 1250–51 (Ala.1987), quoting *Williams v. Worthington,* 386 So.2d 408, 409 (Ala.1980). The defendant in *Kinard* encountered a "gadget ... like a recap" lying in his lane of traffic and claimed that he had no time to dodge the object without placing himself and his passengers in great peril. After hitting the object, one of the car's tires blew and caused a loss of power in the steering and brakes. The defendant's automobile veered in several directions before it crossed into the lane of oncoming traffic and struck the plaintiff's vehicle. The jury found in favor of the defendant in an action based upon negligence and wanton conduct.

On appeal, the plaintiffs claimed that the trial court erred in giving a "sudden emergency" instruction. The Alabama Supreme Court held that the evidence as a whole supported the trial court's decision that "a jury question was presented as to whether a sudden emergency existed [as to the encounter with the recap] and, if so, whether under the circumstances the defendant met the standard of prudence required [when he drove over the recap rather than attempting to dodge it]." *Kinard,* 518 So.2d at 1251, citing *Williams,* 386 So.2d at 409. Thus, the *Kinard* court held that the *manner of driving* over the object rather than swerving to avoid it was to be judged in light of "the standard of care ... which a reasonable and prudent motorist would have exercised under the same or similar circumstances." *Id.* at 1250–51.

The plaintiffs in *Kinard* also challenged the decision to instruct the jury on the "mechanical defect or failure doctrine." The trial court had charged the jury that:

It's the duty of the owner or the operator of the motor vehicle to see that it's reasonably safe—the vehicle—before operating it on a public highway. And where, however, the owner or operator of the vehicle, without knowledge of a defective condition, known or reasonably

aforeseeable [sic], experiences a mechanical failure and such mechanical failure is the sole proximate cause of the injury, or damage, the owner or operator cannot be held liable.

*Id.* at 1251. The Alabama Supreme Court stated that "[i]t was for the jury to decide whether that mechanical failure, or some negligence of the defendant, was the proximate cause of the plaintiffs' injuries." *Id.* (citation omitted).

The instruction on the "mechanical defect or failure" doctrine was necessary in *Kinard* because, even if the jury had found it reasonable or prudent under the circumstances of a *non* mechanical "sudden emergency" for the driver to go straight over the object rather than attempting to dodge it, the jury still had to determine whether the driver's handling of the car *after* it had hit the object was reasonable and prudent. Since the evidence was

> without dispute that defendant's car was equipped with four new tires, that at least one of th[ose] tires 'blew out' or failed when the object was struck, and that defendant's car left the highway immediately thereafter and struck plaintiff's vehicle.... [i]t was for the jury to decide whether that mechanical failure, or some negligence of the defendant, was the proximate cause of plaintiffs' injuries.

*Id.* In other words, it was for the jury to decide whether the accident resulted from an emergency prompted by the mechanical failure, or whether unreasonable driver panic was the cause.

Under the facts of this case, in contrast to *Kinard,* there is absolutely no allegation that Westra failed to exercise reasonable care in light of an emergency situation caused by a mechanical failure. In fact, since the asserted negligence did not involve Westra's handling of the tractor-truck *after* the wheel separated from the truck, the facts related to neither an "emergency" in the sense expressed in *Kinard,* nor Westra's performance as a driver per se. *See Motor Terminal and Transportation Co. v. Millican,* 244 Ala. 39, 12 So.2d 96, 98 (1943), (defendant not entitled to jury charge that tire became detached from truck as a result of a "latent or hidden defect").[7]

As is the case when the claim involves the conduct of the defendant driver in the face of a "sudden emergency" resulting from a "mechanical failure or defect," if the alleged negligence involves a failure to maintain a vehicle or inspect for reasonably foreseeable defects—without regard to the driver's conduct per se—the jury must be instructed that a lack of foreseeability of the defect and the absence of negligence in maintaining the vehicle serve to negate liability.[8]

7. Although *Millican* dealt specifically with a claim of negligence with regard to a failure to inspect or maintain the wheel of a truck which became detached and injured a bystander—and thus it presented the Alabama Supreme Court with facts virtually identical to those involved in this case—the *Millican* court was not faced specifically with a request for a "mechanical defect or failure" instruction, as in this case. The defendants in *Millican* requested an instruction to the jury that the defect in the truck's wheel assembly was latent or undiscoverable. In this case, by contrast, the defendants only requested that the jury be instructed that if the cause for the detachment of the wheel was not known or reasonably foreseeable to the defendants (i.e., that the defendants' lack of care in inspecting and maintaining the tractor-truck did not lead to the detachment), then the injuries sustained by the plaintiff were not due to any negligence on the part of the defendants.

Nevertheless, *Millican* teaches that when the asserted negligence centers not on the defen-

dant's actions in the face of the sudden and unforeseeable discovery of a "mechanical defect or failure," but focuses on the cause of the defective condition itself, the jury need only be charged with regard to the appropriate "duty to take reasonable care to ascertain [the vehicle's] condition by inspection" and to maintain the vehicle in safe working order. 12 So.2d at 99. *Cf. Scott v. Heard,* 497 So.2d 494 (Ala.1986) (stating in dicta that defendant had presented an issue of mechanical failure through evidence that automobile collision resulted from unforeseeable failure of his brakes, not defendant's negligent failure to apply the brakes).

8. Indeed, as explained in the text *supra,* even when the claim centers on an allegation of negligent conduct in the *handling* of a vehicle in the face of either a "mechanical failure" or nonmechanical "sudden emergency," a defendant's right to have the allegedly negligent conduct be judged in light of the emergency circumstances turns on whether the defect or emergency was

The defendants in this case requested the following instruction:

> If the driver, without knowledge of the defective condition, experiences mechanical failure [that was not reasonably foreseeable], and such failure is the sole proximate cause of the injuries, the driver cannot be held liable.[9]

Defendant's Requested Jury Instruction No. 31.

The court instead instructed the jury as follows:

> Now, the first question, then, is were the Defendants guilty of negligence in failing to inspect and maintain that motor vehicle, and that as a direct result of that failure to inspect or maintain, the wheel did become detached and did strike the plaintiff, John Salter. That's the first question.
>
> The second question, after you [answered the first question that you] are reasonably satisfied by the evidence that the Defendants were guilty of doing something that a reasonably prudent truck driver and owner would not have done, or failed to do something that they would have done, you carry that a step further and ask yourselves whether or not John Salter's injuries proximately [sic] resulted from that negligence, as a direct and immediate result of the negligent detachment of the wheel from that truck.

Transcript of Jury Charges at 7. In another portion of the instructions, the court made it clear that the plaintiff had the burden of establishing each element of the claim. *Id.* at 5.

One need only compare the negligence standard charged by Judge Lynne with the charge proposed by the defendants to understand that when the duty under scrutiny involves the condition of the vehicle itself, not the duty to operate the vehicle in a certain manner when faced with a "mechanical defect or failure," the charge given and the charge requested do not differ in any material respects.[10]

■■■ In evaluating whether the trial court has erred in instructing the jury, the reviewing court's sole purpose is to determine whether the instructions properly focused the jury on the specific duty in question and the appropriate standard for evaluating that duty. In this case, the instructions clearly imparted the idea that if the detachment of the wheel was the result of the defendants' negligence, the plaintiff was entitled to a verdict. Conversely, the instructions adequately conveyed the idea that if the detachment resulted from an unforeseeable mechanical defect, the defendants were entitled to a verdict. Thus, we find no error in the trial court's failure to charge the jury as requested by the defendants.

### B. *Whether the Facts Supported a Jury Verdict of Wantonness*

Next, appellants complain that the trial court erred in failing to grant their re-

---

foreseeable, or arose without the fault of the driver. *Kinard,* 518 So.2d at 1250–51.

9. The bracketed material, which was not included in the defendants' proposed charge, is meant to emphasize that even when a mechanical failure instruction is required, the "knowledge" prong is determined by an objective, rather than a subjective, test. As appellants' admit on p. 18 of their Brief, "[t]he elements of a mechanical failure are: (1) that a defective condition exists; (2) that the defective condition was *not* known or *reasonably foreseeable* to the owner or operator of the vehicle; [other elements omitted]." (Emphasis added.)

10. Appellants maintain that *Millican,* discussed in footnote 7 *supra,* is distinguishable from this case since it was practically beyond dispute in *Millican* that the defendants were aware of the wheel's defective condition because the wheel had become detached from the truck on several occasions prior to the accident. A close reading of *Millican* discloses that the holding did not turn upon the presence or absence of explicit knowledge of the defective condition by the defendants, but upon the nature of the asserted negligence. As discussed in the text *supra,* When the focus is not upon the actions of the driver in response to a "mechanical defect or failure," but upon the owner or operator's duty to inspect and maintain the vehicle free of foreseeable defective conditions, it is redundant and unnecessary to instruct the jury that it must find the defendant(s) not liable for the injuries if the defect was not foreseeable. The general charge on the appropriate standard of care of the defendant(s) in inspecting for, and maintaining the vehicle free of, foreseeable defects necessarily makes that clear.

quests for a directed verdict and judgment notwithstanding the verdict. We find that even after indulging all reasonable inferences favorable to appellee from the evidence concerning Westra's knowledge of the wheel's condition prior to the accident, we are unable to find that the jury reasonably could have concluded that appellants' actions were wanton.

Even though under *Erie* we must apply the Alabama definition of wantonness in reviewing the verdict, "in diversity cases federal courts apply a federal rather than a state test in determining the sufficiency of evidence to create a jury question." *Hommel v. Jackson–Atlantic, Inc.*, 438 F.2d 307, 308 (5th Cir.1971) (applying federal standard for sufficiency of evidence to Alabama definition of wantonness), citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).[11] The test has been stated as follows:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A

mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Hommel*, 438 F.2d at 308, quoting *Shipman*, 411 F.2d at 374–75.[12]

In *Stallworth v. Illinois Cent. Gulf R.R.*, 690 F.2d 858 (11th Cir.1982), this Court observed that the Alabama definition of wantonness has been stated as follows:

> " 'Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will *likely* or *probably* result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.' "

*English v. Jacobs*, 263 Ala. 376, 82 So.2d 542, 544 (1955) quoting *Duke v. Gaines*, 224 Ala. 519–20, 140 So. 600, 601 (1932). "[I]t is wantonness when one has knowledge that another (any person) is *likely* to be in a position of danger and with conscious disregard of such known danger proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger." *Graves v. Wildsmith*, 278 Ala. 228, 177 So.2d 448, 452 (1965).

---

11. The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12. In *Pike v. City of Lanett*, 518 So.2d 747 (Ala. Civ.App.1987), an Alabama appellate court held that a wantonness claim based upon an accident resulting from a police officer's nonemergency attempt to pass a truck while travelling up a hill in a no-passing zone should have been submitted to the jury since there was "at least a scintilla of evidence of wanton conduct on his

behalf." 518 So.2d at 748. *Cf. Hommel*, 438 F.2d at 308, *quoting Shipman*, 411 F.2d at 374–75 ("'A mere scintilla of evidence [of wantonness] is insufficient to present a question for the jury.' "). As should be apparent from our discussion in the text *infra*, we do not mean to suggest that our holding that the evidence in this case does not support a wantonness claim turns on the possible distinction between the federal and the Alabama standard for the sufficiency of evidence necessary to create a jury issue on wantonness.

*Stallworth,* 690 F.2d at 863 (emphasis added). *See also, Pike v. City of Lanett,* 518 So.2d 747, 748 (Ala.Civ.App.1987); *Gunnells v. Dethrage,* 366 So.2d 1104 (Ala. 1979); *Tolbert v. Gulsby,* 333 So.2d 129 (Ala.1976); *Rosen v. Lawson,* 281 Ala. 351, 202 So.2d 716 (1967); *Lewis v. Zell,* 279 Ala. 33, 181 So.2d 101 (1965).

The dispute over the sufficiency of the evidence to support wantonness in this case centers on the mental element of the wantonness claim—the defendants' " ' 'knowledge of existing conditions and consciousness that ... injury will *likely* or *probably* result.' ' " *Stallworth,* 690 F.2d at 863, quoting *English,* 263 Ala. 376, 82 So.2d at 544, in turn quoting *Duke,* 224 Ala. at 519–20, 140 So. at 601. Appellee urges two theories under which it claims this Court could, by indulging all reasonable inferences, hold that a reasonable jury could have found wantonness.

■ First, appellee maintains that the evidence discloses a gross failure by the appellants to inspect and maintain the wheels free of metal-weakening rust and corrosion and/or loose lug nuts. Although Westra testified that he had visually inspected his entire truck, including the wheels, prior to departing on the day of the accident, and that the semi-annual I.C.C. inspection of the truck included a "wheel and nut check," the mechanic testified that the rusty and corroded condition of the remaining portions of the lug bolts must have developed after a prolonged period of inattention and lack of proper maintenance.

Appellee points out that under Alabama law, "[k]nowledge of a condition and consciousness of the danger may be inferred." *Stallworth,* 690 F.2d at 863, citing *Myers v. Evans,* 287 Ala. 710, 255 So.2d 581, 583 (1971). *See Pike,* 518 So.2d at 748 (knowledge need not be shown by direct proof); *Lankford v. Mong,* 283 Ala. 24, 214 So.2d 301 (1968) (same). While it is true that circumstantial evidence may under the appropriate circumstances demonstrate the "knowledge" element of a wantonness claim, "negligence in not appreciating the dangerousness of the conditions is not wantonness." *Stallworth,* 690 F.2d at 863, citing *Graves,* 278 Ala. at 228, 177 So.2d at 452.

■ Under appellee's theory, the jury reasonably could have inferred that (1) the evidence of disrepair or neglect demonstrated an awareness of the condition; (2) this awareness demonstrated an appreciation of the danger; and (3) appellants' appreciation of the danger was accurate, even in light of the fact that the shearing of all lug bolts at once was virtually unprecedented. "While it is routinely said in criminal cases that guilt may not be proven by inference upon inference, [citation omitted], the practice in civil cases is to evaluate the probative value of every inference on its own merits." *Cora Pub., Inc., v. Continental Casualty Co.,* 619 F.2d 482, 485–86 (11th Cir.1980). When inferences are built upon inferences, the probability of the last or ultimate inference is attenuated by each underlying inference. *Id.*[13] As we interpret Alabama law, juries may not assess quasi-criminal sanctions under facts which, absent severely attenuated inferential probability, amount to negligence in not appreciating the dangerousness of a condition. *See Stallworth,* 690 F.2d at 863, *Graves,* 278 Ala. at 228, 177 So.2d at 452; *Buffalo Rock Co. v. Davis,* 228 Ala. 603, 606, 154 So. 556, 558 (1934).

■ Although appellee's second theory presents a closer question, it too fails. Appellee claims that the mechanic's testimony establishes that prior to the accident there must have been rust streaks and signs of corrosion on the outer, easily visible portion of the wheel. Although Westra testified that he did not observe any such evidence of rust or corrosion, Salter asserts that the jury may have disbelieved Westra and found that Westra indeed saw the marks on the wheel, knew that they indicated a dangerous condition, but chose to drive the tractor-truck despite being conscious that injury would likely or probably

---

**13.** *Cf. N.L.R.B. v. Camco, Inc.,* 340 F.2d 803, 811 (5th Cir.1965) (Wisdom, J.) (rule against pyramiding inferences is clumsy legalese for "exclusion of evidence having little or no probative value").

result. Appellants, on the other hand, attempt to refute this theory of the evidence. After reviewing the evidence presented in the light most favorable to the jury's verdict, we find that the jury could reasonably have found Westra had observed rust streaks on the outer portion of the wheel. Nevertheless, such "knowledge" does not support a wantonness finding.

There are two distinct factual conclusions that the jury could have drawn from Westra's actual knowledge of the rust streaks. First, both Salter's expert and Westra testified that rust streaks can indicate loose lug nuts. Westra further testified that he knew that driving with loose lug nuts was dangerous since loose lug nuts would cause a wheel to vibrate intensely and possibly shear one or more of its lug bolts.

We find that the jury could not, however, reasonably have concluded that Westra actually observed the rust streaks, knew that they indicated loose lug nuts, but proceeded to drive despite knowing injury would "likely or probably" result. There was absolutely no evidence that the detached wheels, which were located beneath the driver's side of the cab, vibrated at all prior to their detachment or manifested any other signs of loose lug nuts. Nor was there was there any evidence that the rust streaks necessarily meant that the lug nuts were loose.[14]

Indeed, the second and most plausible conclusion that the jury could have drawn from Westra's knowledge of the rust was that Westra was aware that rust streaks can indicate a potential problem with the lug bolts quite apart from loose lug nuts. In fact, appellee points out that Westra testified that driving with many rusty or corroded lugs would pose at least a potential risk of shearing. Therefore, Appellee's strongest theory of wantonness is that although Westra did not know that the lug nuts were loose (and they probably were not loose), he knew that the wheels manifested signs that some or all of the lugs were rusty, yet he drove anyway.

■■■ Such a showing fails to satisfy Alabama's requirement that the defendant be conscious that his act or failure to act " ' 'will *likely or probably* ' ' " result in injury. *Stallworth*, 690 F.2d at 863, quoting *English*, 82 So.2d at 544, in turn quoting *Duke*, 140 So. at 601 (emphasis added). The standards for determining precisely when a wrongdoer's conduct is sufficiently oppressive, or when the probability of injury (that the wrongdoer was conscious of) is sufficient to justify an award of punitive damages continue to elude effective definition.[15] While it may be difficult to define the exact point at which the probability of harm is sufficient to support a jury's finding of wantonness, courts and juries must attempt to discern that line in light of the fact that wantonness is distinct from negligence, and punitive damages are meant

> "to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." Restatement (Second) of Torts § 908(1) (1979). The focus is on the character of the tortfeasors conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.

*Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983) (5–4 decision). A jury may not find wantonness simply on the basis of a defendant's awareness that his actions (or failure to act) would entail more risks than not taking the

---

14. We cannot accept appellee's unsupported inference that Westra, a driver with 23 years experience, observed telltale signs of loose lug nuts yet consciously chose not to take the relatively simple precaution of tightening the lug nuts prior to his departure on an interstate trip. Of course even an experienced driver like Westra could have been negligent in failing to check for loose lug nuts. But negligence is not wantonness, see the discussion in the text *supra*.

15. *See Womack v. Gettelfinger*, 808 F.2d 446, 452 (6th Cir.1986), citing Sales & Cole, *Punitive Damages: A Relic That Has Outlived Its Origins*, 37 Vand.L.Rev. 1117, 1137 (1984). Indeed, the Supreme Court has recognized the inherent difficulty in determining the degree of recklessness or carelessness or culpable indifference that is required to sustain the assessment of punitive damages. *See Smith v. Wade*, 461 U.S. 30, 39–40, 103 S.Ct. 1625, 1631–32, 75 L.Ed.2d 632 (1983) (5–4 decision).

action in question. Thus, just because Westra may have known that visible signs of rust could mean an increase in risk, this does not mean that Westra was wanton.

To find otherwise would erase the distinction between negligence and wantonness and would not be faithful to the idea expressed by Alabama courts that the risk of injury must be "likely" or "probable."[16] We discern no tendency on the part of Alabama courts to relax the standard for wantonness. *See, e.g., Mink v. Brown,* 276 Ala. 3, 158 So.2d 647 (1963) (even where a motorist drove 50 m.p.h. in a 30 m.p.h. zone, motorist was not necessarily guilty of wantonness in connection with collision since the road conditions suggested that travelling at such a speed would not likely result in injury—even though such conduct could have been found negligent).

In this case, not one of the experts nor any evidence indicated that the shearing of all ten lug bolts was the natural, probable, or even unlikely but somewhat possible result of driving despite knowing that the wheel displayed rust marks. Absent such evidence, a jury may not assess punitive damages. *See, e.g., Womack,* 808 F.2d 446 (6th Cir.1986) (applying Tennessee law to find wantonness verdict unsupported where defendant pulled tractor-trailer across lane of oncoming traffic after pulling from driveway early on foggy morning).[17]

### III. CONCLUSION

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for entry of Judgment Notwithstanding the Verdict on the wantonness claim.

---

16. *See Punitive Damages and Subjective States of Mind: A Positive Economic Theory,* 40 Ala.L. Rev. 1197 (1989) (explaining the importance of requiring deliberateness or consciousness of likely harm in assessing punitive damages).

17. *Cf., Sakamoto v. NAB Trucking Co., Inc.,* 717 F.2d 1000 (6th Cir.1983) (submission of wantonness claim to jury justified where truck driver, habitual user of amphetamines who had been without sleep for 40 hours, attempted U-turn on interstate and decedent slammed into trailer); *Branter v. Poole,* 487 F.2d 1326 (10th Cir.1973) (evidence sufficient to submit wantonness claim to jury where truck's transmission failed while going up hill after owner had warned of possible disengagement of transmission and evidence was submitted that truck would not have passed state inspection).