[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14322
_____

D. C. Docket No. 1:04-cv-20701-WMH

MARYLA MADURA,

Plaintiff-Appellant,

versus

CITY OF NORTH MIAMI BEACH, FLORIDA,
a political subdivision of the State of Florida,
ANTONIO MARCIANTE,
TONY SANCHEZ,

Defendants-Appellees,

MICHAEL J. MUNDY,
JOHN DOES, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 24, 2013)

Before DUBINA, Chief Judge, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Dr. Maryla Madura ("Madura") appeals: (1) the grant of summary judgment as to Defendants-Appellees Antonio Marciente ("Marciente") and Tony Sanchez ("Sanchez") on Madura's § 1983 false arrest and excessive force claims and to Defendant-Appellee City of North Miami Beach ("the City") on Madura's state law false arrest / false imprisonment claim; (2) the directed verdict for Sanchez on Madura's intentional infliction of emotional distress claim; (3) the grant of the City's post-verdict motion for a judgment as a matter of law on Madura's assault and battery claims; and (4) the exclusion and allowance of certain evidence and testimony at trial.

## I.

On June 25, 2002, around 7:30 p.m. and before dark, several of the City's police officers including Sanchez and Marciente confronted and arrested a purchaser of 100 MDMA ecstasy pills, Lazaro Martinez ("Martinez"), at a Taco Bell in North Miami Beach. At the same time that Martinez was confronted, Madura, a white female, stopped at the Taco Bell for dinner. In the parking lot, Madura saw several unidentified, armed police officers dressed in black "taking down" Martinez. Madura mistook the officers for terrorists or gang members, was

2

alarmed, and left the parking lot.  The police, at Sanchez's direction, followed Madura, believing her to be connected to Martinez.  They stopped Madura's car by physically blocking her passage with an SUV, arrested her, searched her car, and later released her after realizing that she had no connection to Martinez. According to Madura, Sanchez also threatened her not to report their mistake. Madura suffered physical and emotional injuries and received medical treatment as well as ongoing psychological treatment.

The more specific details about the events differ substantially, however, according to the parties' testimony.  Attached to this opinion as "Appendix I" is a side-by-side comparison of their accounts.

## II.

The issues presented on appeal are:

1.  Whether the district court erroneously granted summary judgment to:

> (a) Marciante and Sanchez on Madura's § 1983 false arrest claims;

> (b) the City on Madura's state law false arrest / false imprisonment claim;

> (c) Sanchez on Madura's § 1983 excessive force claim.

2.  Whether the district court erroneously directed a verdict for Sanchez on Madura's intentional infliction of emotional distress claim.

3

3.  Whether the district court erroneously granted the City's renewed motion for judgment as a matter of law on the assault and battery claims.

4.  Whether the district court abused its discretion by:

(a) excluding Madura's medical records as evidence;

(b) allowing defense counsel to ask leading questions of Marciante on cross-examination;

(c) allowing testimony from a defense witness not identified prior to trial.

## III.

We review *de novo* the grant of summary judgment, drawing all inferences and construing the evidence in the light most favorable to the non-moving party. *Univ. of Ala. Bd. Of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1271 (11th Cir. 2012).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

We review *de novo* the grant of a Rule 50(a) motion for judgment as matter of law, viewing the evidence in the light most favorable to the non-moving party and affirming only if "reasonable people could not arrive at a contrary verdict."

4

*Ramirez v. Sec'y, U.S. Dep't. of Transp.*, 686 F.3d 1239, 1244 (11th Cir. 2012) (internal quotation marks omitted).

We review *de novo* the grant of a Rule 50(b) renewed motion for judgment as a matter of law, viewing the evidence and drawing all inferences in favor of the non-moving party. *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). "Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim." *Id.*

We review the district court's evidentiary rulings for an abuse of discretion and will reverse "only if the complaining party establishes that the evidentiary ruling resulted in a substantial prejudicial effect, thus warranting reversal of the jury's verdict." *Anderson v. WBMG-42*, 253 F.3d 561, 563 (11th Cir. 2001) (internal quotation marks omitted); *see also Salter v. Westra*, 904 F.2d 1517, 1519 n.1 (11th Cir. 1990) (reviewing for abuse of discretion a district court's overruling an objection to leading questions); *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982) (reviewing for abuse of discretion a district court's allowance of a witness not identified prior to trial).

**IV.**

5

After reviewing the extensive record in this case, reading the parties' briefs and having the benefit of oral argument, we conclude that the district court erred in granting summary judgment based on qualified immunity on the § 1983 false arrest claims against Marciante and Sanchez and the excessive force claim against Sanchez and in granting summary judgment on the false arrest/false imprisonment tort claim against the City. The district court also erred in granting judgment as a matter of law on the intentional infliction of emotional distress claim against Sanchez and the assault and battery tort claims against the City. At each of these stages of the proceedings, the district court failed to view the facts in the light most favorable to Madura and to draw all reasonable inferences in her favor. Instead, the district court improperly gave greater weight to the officers' testimony. Because this case will be remanded and tried again, we need not determine whether the district court abused its discretion in allowing or refusing certain evidence or testimony.

We therefore vacate: (1) the district court's grant of summary judgment on Madura's § 1983 false arrest claims against Marciante and Sanchez, state law false arrest/false imprisonment claim against the City, and § 1983 excessive force claim against Sanchez; (2) the directed verdict for Sanchez on Madura's intentional infliction of emotional distress claim; and (3) the grant of the City's post-verdict

6

motion for judgment as a matter of law on Madura's assault and battery claims. We also set aside the jury's verdict in favor of Marciante on Madura's § 1983 excessive force claim, as well as the jury's verdict against the City on Madura's state law assault and battery claims.[1]  We remand this case for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

---

[1] We must vacate the verdicts in favor of Marciante and against the City because it is now possible, on remand, that the jury will decide that the officers unlawfully pursued and arrested Madura.  If the jury determines that Madura was falsely arrested, then the jury will necessarily be instructed differently concerning Officer Marciante's use of force.  *See Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1331–32 (11th Cir. 2006) ("Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim" because "if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." (internal quotation marks and citation omitted)).

7

## APPENDIX I

| Madura's version of the facts | Appellees' version of the facts |
| --- | --- |
| Martinez says that he told the police's confidential informant that others would come to the Taco Bell, but Martinez says he did not identify or describe the others he expected.  Thus, the police had no reason to suspect Madura's association with Martinez. | The confidential informant working with police to catch Martinez communicated to the police that other drug purchasers associated with Martinez, including a white female, might arrive at the Taco Bell to purchase ecstasy. |
| Upon seeing armed men taking Martinez down, Madura promptly backed out of her parking spot at Taco Bell, drove to the exit, and waited before safely entering traffic at a reasonable speed.  Within a couple of blocks, she stopped for a red light. | Madura sped and drove her car erratically from the Taco Bell parking lot.  Sanchez, believing that other drug purchasers were coming to meet Martinez, noticed that Madura never got out of her car and that she drove away in haste.  He instructed his subordinate officers to stop her car. |
| At least two unmarked police SUVs surrounded Madura's car at the red light; one SUV pulled in front of her, blocking her passage.  At least three unidentified men in black approached Madura with guns pointed at her head shouting, "get out of the car, bitch, get the f--- out" and "f---ing whore."  One man, Officer Starnes, opened his SUV door into her front bumper, damaging her car.  No one identified themselves to Madura as police, but she understood their order to get out. | Officers Marciante, Starnes and Davis pursued Madura, positioned a police SUV in front of Madura's car, approached her door and repeatedly instructed her to get out of the car and raise her hands.  Starnes and Davis say that they yelled repeatedly, "Police, let me see your hands!"  The officers' vests identified them as "police."  No officers used profanity to frighten or insult Madura. |
| Madura hesitated at first, but put the car in park without moving forward toward the police SUV.  She unfastened her seatbelt and opened her door.  Before she could get out, Marciante grabbed Madura by her hair and neck and threw her face down on the pavement, causing | Because Madura kept her hands on the steering wheel, the officers believed she did not intend to comply.  Marciente opened Madura's door as the car rolled forward and struck the police SUV.  Marciente ordered her to put the car in park because he believed she could |

8

| | |
|---|---|
| an abrasion on her forehead. | injure Officer Starnes, who was in front of her car. Marciante then used force to remove Madura from the car. Other officers agreed that Marciante grabbed Madura's left shoulder and physically removed her with force from the car before placing her face down to the pavement. |
| Marciante straddled Madura from behind, grabbed her hair and neck, and repeatedly yelled "you f---ing bitch" while placing his weight on her back. He then handcuffed Madura and grabbed her hair again to pull her into a standing position | Marciante knelt on the ground beside Madura, handcuffing her without bearing any weight on her back before returning her to a standing position. |
| Police drove Madura back to the Taco Bell parking lot where Sanchez identified himself as the officer in charge. Madura was interrogated for about 15 minutes while officers searched her car. After about half an hour in handcuffs, Madura was released without being charged. | Back at the Taco Bell parking lot, the officers realized their mistake, explained themselves, and apologized to Madura. From pursuit to apology, the events took 15 to 20 minutes. |
| Sanchez threatened Madura and caused her to fear reporting their misconduct or suing them. Sanchez told Madura that the police had powerful connections, e.g., to immigration enforcement agencies, and that they could make her life difficult. He similarly threatened her father on the phone after the incident. | Sanchez denies threatening Madura or her father about suing or complaining. He only offered to have the City assist with car repairs or medical treatment. Sanchez testified that Madura actually insinuated that she would take it easy on them if they would help her get a child psychologist's job with the City, or help her with her immigration status. |

9